**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Carlos MORENO–CISNEROS,**
**Defendant–Appellant.**

**No. 01–30421.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 2002.

Filed Jan. 31, 2003.

Robert M. Stone, Medford, OR, for the appellant.

Robert G. Thomson, Assistant United States Attorney, Medford, OR, for the appellee.

Before: REAVLEY,* KOZINSKI, and W. FLETCHER, Circuit Judges.

Opinion by Judge REAVLEY; Dissent by Judge WILLIAM A. FLETCHER.

REAVLEY, Circuit Judge.

The issue presented in this appeal is whether, under U.S.S.G. § 2L1.2(b)(1), as amended Nov. 1, 2001, the length of the "sentence imposed" for a prior state conviction includes the prison sentence the defendant received after his probation was revoked. We agree with the district court that it does and accordingly affirm.

In 2001 appellant Carlos Moreno–Cisneros was convicted after a guilty plea of illegal reentry under 8 U.S.C. § 1326. He was subject to an enhanced sentence under 8 U.S.C. § 1326(b)(2), which provides that the maximum sentence for illegal reentry increases from two to twenty years if the alien's "removal was subsequent to a conviction for commission of an aggravated felony." In 1988 Moreno–Cisneros had been convicted in California state court of possession for sale of a controlled substance, and he was subsequently deported. He does not dispute that his prior drug conviction was an aggravated felony, as 8 U.S.C. § 1101(a)(43)(B) defines an aggravated felony to include a drug trafficking offense.

---

* The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

■ Moreno–Cisneros does, however, dispute the district court's application of Sentencing Guideline § 2L1.2(b)(1)(A)(i), which provides for a 16–level increase in the offense level if the defendant was deported after a conviction for a drug trafficking felony "for which the sentence imposed exceeded 13 months." U.S.S.G. § 2L1.2(b)(1)(A)(i).

Moreno–Cisneros disputes that the "sentence imposed" for the state court conviction exceeded thirteen months. After his state court conviction, he had received a three-year suspended sentence, with three years probation and credit for jail time served of 226 days. In 1989, however, his probation was revoked and he was sentenced to three years in prison. He served just over thirteen months of this sentence in prison before being released.

■ Application note 1(A)(iv) to the Guideline provides that "[i]f all or any part of a sentence of imprisonment was probated, suspended, deferred, or stayed, 'sentence imposed' refers only to the portion that was not probated, suspended, deferred, or stayed." We follow the application notes unless they are inconsistent with the text of the Guidelines. *United States v. Bachiero*, 969 F.2d 733, 734 (9th Cir. 1992). The narrow question presented is whether, notwithstanding application note 1(A)(iv), the three-year prison sentence imposed by the state court after Moreno–Cisneros's probation was revoked is included in the calculation of the length of the "sentence imposed" under § 2L1.2(b)(1)(A)(i). Stated another way, the issue is whether the "sentence imposed" is limited to the prison sentence originally imposed, or includes the additional incarceration ordered because of the revocation of the probation that was originally imposed.

We are persuaded that the prison sentence imposed after revocation of proba-

tion should be included in calculating the length of the sentence imposed for the prior offense. First, the Guideline and application note quoted above do not limit the sentence imposed to the sentence as it was originally imposed, and we can see no reason to infer such a limitation from the wording of the provisions. Moreover, we can discern no basis for treating an original sentence of over thirteen months incarceration as more serious than a sentence of over thirteen months incarceration that consists of the original sentence plus the result of the revocation of probation. A defendant who does not abide by the terms of his probation has demonstrated that he should not have been given probation in the first place.

Further, analogous provisions of the Guidelines argue in favor of including the sentence imposed after revocation of probation in the calculation of the length of the "sentence imposed" under § 2L1.2(b)(1). Guideline § 4A1.1, which determines criminal history category points, provides that three points are added if the prior sentence of imprisonment exceeded thirteen months, and that two points are added if the prior sentence of imprisonment was at least sixty days. U.S.S.G. § 4A1.1(a)-(b). Guideline § 4A1.2(b)(2) provides that "[i]f part of a sentence of imprisonment was suspended, 'sentence of imprisonment' refers only to the portion that was not suspended." U.S.S.G. § 4A1.2(b)(2). However, § 4A1.2(k)(1) provides: "In the case of a prior revocation of probation ... add the original term of imprisonment to any term of imprisonment imposed upon revocation." U.S.S.G. § 4A1.2(k)(1).

Guideline § 4A1.2 is analogous to § 2L1.2(b)(1). Like § 4A1.2(b)(2), § 2L1.2 application note 1(A)(iv) excludes suspended sentences from the calculation of a term of imprisonment. Section 4A1.2(k)(1) clar-

ifies that this exclusion does not apply to probation that is revoked. Moreno–Cisneros argues that the absence of a provision similar to § 4A1.2(k)(1) in § 2L1.2 implies the Commission intended to adopt the opposite rule for the latter section. We find the contrary inference more plausible in this case. Section 4A1.2 is a broadly applicable section of the Guidelines. It is not surprising that it contains many definitions clarifying the term "sentence of imprisonment." *See, e.g.,* U.S.S.G. § 4A1.2(g)-(i) (treatment of military, foreign and tribal convictions); *id.* § 4A1.2(j) (treatment of expunged convictions); *id.* § 4A1.2(*l*) (treatment of convictions pending appeal). Section 2L1.2, like many other Guidelines sections, is a narrowly applicable provision dealing only with a particular offense. The fact that it does not define its terms to the same level of detail does not imply that the Commission intended definitions opposite to those it spelt out in § 4A1.2.

*United States v. Jimenez,* 258 F.3d 1120 (9th Cir.2001), *cert. denied,* 534 U.S. 1151, 122 S.Ct. 1115, 151 L.Ed.2d 1009 (2002), also supports our interpretation. In that case, the defendant received a sixteen-point increase in his sentence for illegal reentry under an earlier version of § 2L1.2(b)(1)(A), which applied if the defendant had been deported after a conviction for an "aggravated felony" as defined by 8 U.S.C. § 1101(a)(43). Under the statute, an aggravated felony includes a crime of violence for which the "term of imprisonment" is at least one year. 8 U.S.C. § 1101(a)(43)(F). The defendant in *Jimenez* had a prior conviction for spousal bat-

tery and had received probation. His probation was revoked, and he was sentenced to two years in prison and ultimately was incarcerated for thirteen months. *Jimenez,* 258 F.3d at 1123.

The defendant in *Jimenez* argued that " 'the only sentence that matters for the purpose of evaluating the conviction for aggravated felony purposes is the one originally imposed by the court.' " *Id.* at 1125. We rejected this argument and held that the term of imprisonment included the term served after revocation of probation. "The fact that this term of imprisonment was not imposed until after he violated his probation is not legally significant." *Id.* Jimenez and the pending case both concern whether the period of incarceration after revocation of probation is included in the length of a prior sentence for purposes of deciding whether to impose an enhanced sentence for illegal reentry. Although *Jimenez* involved the definition of "term of imprisonment" under 8 U.S.C. § 1101(a)(43)(F), while the pending case involves the definition of "sentence imposed" under Guideline § 2L1.2(b)(1)(A)(i), we do not read that distinction to be consequential. *Jimenez* cited *Alberto–Gonzalez v. INS,* 215 F.3d 906, 909 (9th Cir.2000), for the proposition that the phrase "term of imprisonment" in the statute "refers to 'the actual sentence imposed by the judge.' " *Jimenez,* 258 F.3d at 1125 (quoting *Alberto–Gonzalez,* 215 F.3d at 909). *Jimenez* drew no distinction between the terms, and we see no reason to do so.[1]

AFFIRMED.

---

**1.** The dissent's attempt to distinguish *Jimenez* would be more convincing if the Commission, in amending § 2L1.2, had not adopted the very phrase "sentence imposed" that we held synonymous with "term of imprisonment" in *Alberto–Gonzalez* and *Jimenez.* Drug trafficking offenses previously had not been graded by sentence length at all; by

adopting the "sentence imposed" standard, the Commission embraced rather than rejected our approach. The Commission's rejection of the "time served" proposal is irrelevant because *Jimenez* did not apply a "time served" standard: "Term of imprisonment" is "the actual sentence imposed by the judge"; it therefore excludes good-time cred-

**460**

WILLIAM A. FLETCHER, Circuit Judge, dissenting:

The majority concludes that a previously suspended three-year prison sentence imposed because of a probation violation counts under U.S.S.G. § 2L1.2(b)(1) as part of a "sentence imposed" because of a state drug conviction. I respectfully dissent.

As a result of a drug trafficking conviction in 1988, Moreno–Cisneros received a three-year period of probation, a three-year suspended sentence, and a credit for the 266 days he had already served in prison. The sentencing document in the state court provided in relevant part:

> It appearing to the Court that the ends of justice will be served by granting probation to the Defendant,
> NOW, THEREFORE, IT IS ORDERED AND ADJUDGED that Defendant be and he/she is hereby (sentenced to *Ca. Dept. of Corrections* for the term of *Three (3) years* but that execution) (admitted to probation and that imposition) of sentence is hereby *suspended* for a period of (*3*) years from and after this date, such period of time to be considered the period of probation, subject to the following conditions:
>
> . . . .
>
> . . . A violation of any of [the] terms [of your probation] will render you liable to the following penalt[y] . . . .
>
> . . . If the Court has reason to believe that you have violated any of the terms of your probation, the Court may revoke and terminate your probation, and may after hearing, order that you serve any or all of the sentence heretofore *suspended* . . . .

(Underlining added to indicate words inserted by the state court into blanks in the form; italics added for emphasis.) After the court entered the order, Moreno–Cisneros was released from custody. Moreno–Cisneros subsequently violated the conditions of his probation and, as a consequence of that violation, was sentenced to serve the previously suspended three-year sentence.

In 2001, Moreno–Cisneros was convicted under 8 U.S.C. §§ 1326(a) and 1326(b)(2) of illegal reentry into the United States after having been previously convicted of an aggravated felony. The Sentencing Guideline for § 1326(b)(2) distinguishes among prior convictions for purposes of sentencing. Specifically, U.S.S.G. § 2L1.2(b)(1)(A)(i) provides that the offense level of someone convicted under § 1326(b)(2) should be increased by 16 levels

> If the defendant previously was deported . . . after—(A) a conviction for a felony that is (i) a drug trafficking offense for which the *sentence imposed* exceeded 13 months. . . .

(Emphasis added.) By contrast, for drug trafficking convictions in which the "sentence imposed" was 13 months or less, the offense level is increased by only 12 levels. U.S.S.G. § 2L1.2(b)(1)(B). These provisions of the Guidelines became effective on November 1, 2001, a week before the district court sentenced Moreno–Cisneros.

The question of first impression posed in this case is whether the phrase "sentence imposed" in § 2L1.2(b)(1) refers to the sentence imposed at the time of sentencing, or whether it also refers to a suspend-

---

its and similar nonjudicial (and thus difficult-to-ascertain) sentence adjustments. Finally, although *unrevoked* suspended sentences are treated differently by 8 U.S.C. § 1101(a)(48)(B), that provision was not at issue in *Jimenez, cf. United States v. Landeros–Arreola*, 260 F.3d 407, 410 (5th Cir.2001) (noting inapplicability of the provision where defendant is sentenced directly to probation), so it doesn't distinguish the case.

ed sentence later imposed because of a post-sentencing probation violation. The answer is given by the Application Note 1(A)(iv) to § 2L1.2, which provides:

> For purposes of subsection(b)(1) [of § 2L1.2]:
>
> . . . .
>
> (iv) If all or any part of a sentence of imprisonment was probated, *suspended,* deferred, or stayed, *"sentence imposed" refers only to the portion that was not* probated, *suspended,* deferred, or stayed.

(Emphasis added.)

An Application Note is binding authority unless it is inconsistent with the Guideline itself. *See Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). Application Note 1(A)(iv) can hardly be clearer: "[F]or purposes of" U.S.S.G. § 2L1.2(b)(1), the phrase "sentence imposed" does not include a suspended sentence. The majority and I agree that Moreno–Cisneros initially received a three-year "suspended" sentence within the meaning of the Guideline, and that this suspended part of his sentence was not, at the time of sentencing, part of the "sentence imposed" within the meaning of the Guideline.[1] The majority concludes, however, that if a suspended sentence is later imposed as a result of a later probation violation, the term "sentence imposed" is retroactively expanded to include the later-imposed sentence.

The majority gives three reasons in support of its conclusion. First, it states that "the Guideline and the application note . . . do not limit the sentence imposed to the sentence as it was originally imposed." I believe that in saying this the majority simply ignores the words of the Guideline and Application Note it purports to apply. The Guideline and Note do indeed "limit the sentence imposed to the sentence as it was originally imposed." They do so by specifically excluding any suspended sentence from the definition of "sentence imposed." To support its refusal to give effect to the text, the majority states that it can see no policy reason for treating differently sentences that are originally imposed from sentences that result from probation violations. That statement is, of course, beside the point. The task of this court is not to invent policy reasons that should have motivated the Sentencing Commission, and then to read the Guide-

---

**1.** It is likely that Moreno–Cisneros also received a "probated" sentence within the meaning of the Guideline. The California sentencing court "suspended" the sentence for three years and also subjected him to probation for the same three-year period. In the pre-Guidelines federal system, probated and suspended sentences were essentially the same, since suspension was simply a procedural step on the way to imposing probation. *United States v. Ayala–Gomez,* 255 F.3d 1314, 1317–18 (11th Cir.2001) (citing 18 U.S.C. § 3651 (1982) (permitting a court to suspend imposition of a sentence and place a defendant on probation), *repealed by* Sentencing Reform Act of 1984, Pub.L. No. 98–473, § 212(a)(2), 98 Stat.1945, 1987). In some state systems, there is a distinction between suspended and probated sentences. *See id.* at 1318 (noting that in Georgia probated and suspended sentences, though similar, are not equivalent). For purposes of this case, we need not consider what, if any, distinction California draws between suspended and probated sentences. Even if Moreno–Cisneros's three-year sentence was probated as well as suspended at the time of sentencing, the essential points of agreement and disagreement between the majority and me remain the same. We agree that at the time of sentencing, the suspended (and possibly probated) sentence did not count as part of the "sentence imposed" within the meaning of the Guideline. We disagree on the status of the sentence imposed as a result of the violation of probation, and our disagreement does not hinge on whether the later-imposed sentence is characterized as a previously suspended or previously probated sentence.

lines and Applications Notes in light of those reasons. Its task is to apply the Guidelines and Application Notes as they are written.

Second, the majority relies on U.S.S.G. §§ 4A1.1 and 4A1.2 (contained in Chapter Four of the Guidelines) to escape from the text of U.S.S.G. § 2L1.2(b)(1) and its Application Note (contained in Chapter Two). Section 4A1.1(a) and (b) uses the phrase "prior sentence of imprisonment." Section 4A1.2(k)(1) then defines that phrase to include imprisonment imposed after revocation of probation. If the phrase "prior sentence of imprisonment," as used in § 4A1.1, were synonymous with the phrase "sentence imposed," as used in § 2L1.2, the majority would be right to rely on the definition provided in § 4A1.2(k)(1). But the phrases have different functions and different meanings.

Section 2L1.2 (containing the phrase "sentence imposed") is part of Chapter Two, titled "Offense Conduct." By contrast, §§ 4A1.1 (containing the phrase "prior sentence of imprisonment") is part of Chapter Four, Part A, titled "Criminal History." In common with other circuits, we have recognized the different functions of these two chapters. Chapter Two provides Guidelines relevant to the offense conduct for which the defendant is being sentenced. Chapter Four, Part A, provides Guidelines relevant to the criminal history of a defendant *prior* to the offense for which he is being sentenced. "Offense level determination serves a different purpose than the criminal history calculation." *United States v. Parker,* 136 F.3d 653, 655 (9th Cir.1998). *See United States v. Hidalgo–Macias,* 300 F.3d 281, 286 (2d Cir. 2002) ("The offense level rules address the severity of the instant offense, whereas the criminal history rules are intended to address issues of recidivism and deterrence."); *United States v. Burnett,* 952

F.2d 187, 189 (8th Cir.1991) (same); *United States v. Martinez,* 931 F.2d 851, 852 n. 1 (11th Cir.1991) (same). *See also United States v. Tejeda–Perez,* 199 F.3d 981, 982 (8th Cir.1999) (explicitly refusing to apply the definition of "sentence of imprisonment" under U.S.S.G. § 4A1.2(b) to the definition of "term of imprisonment" for sentencing under § 2L2.1).

Moreno–Cisneros was convicted under 8 U.S.C. §§ 1326(a) and (b)(2), for which a prior conviction for an "aggravated felony" is an element of the crime, and hence part of the offense conduct. Section 2L1.2(b) distinguishes more serious from less serious offenses. In the amended § 2L1.2, the Sentencing Commission employed the phrase "sentence imposed," and chose the period of incarceration imposed at the time of sentencing as the factor by which to measure seriousness of the offense conduct. It did not choose the length of the original period of incarceration, plus any additional incarceration resulting from subsequent bad behavior such as violation of probation. This choice makes obvious analytic sense, given that the purpose of the Guideline is to evaluate the seriousness of the offense conduct rather than of any subsequent bad behavior.

On the other hand, §§ 4A1.1 and 4A1.2(k)(1) are directed to a defendant's criminal history, and measure the seriousness of all of his prior bad acts. In drafting these sections, the Sentencing Commission employed the phrase "prior sentence of imprisonment," and chose all periods of prior incarceration of the defendant, including incarceration resulting from probation violations, as the appropriate measure. This choice makes obvious sense, given that the purpose of the Guideline is to evaluate all the bad behavior of the defendant prior to the offense for which he is being sentenced.

Not only is it clear from the functions of the chapters in which the two sections appear that the two phrases are designed to have different meanings, the text of the restrictive definition of "sentence imposed" contained in Application Note 1(A)(iv) to § 2L1.2(b)(1) specifically provides that the definition is provided "for purposes of subsection (b)(1)" of § 2L1.2. The Note makes no reference to any other definition. Further, Application Note 5 provides that "[a] conviction taken into account under subsection (b)(1) is not excluded from consideration of whether that conviction receives criminal history points pursuant to Chapter Four, Part A (Criminal History)." The Note thus indicates that a prior conviction can be taken into account twice—once as an element of an offense in § 2L1.2(b)(1) and again as part of a defendant's criminal history. But the Note does *not* indicate that the definition of sentence length, for purposes of criminal history, is the same as the definition for purposes of offense conduct.

Nothing else in the texts of the two chapters indicates that a definition contained in § 4A1.2(k)(1) should be applied to a phrase in § 2L1.2(b)(1). The Introductory Commentary to Chapter Two specifically refers to and incorporates *Part B* of Chapter Four, stating, "Certain factors relevant to the offense that are not covered in specific guidelines in Chapter Two are set forth in ... Chapter Four, *Part B* (Career Offenders and Criminal Livelihood) ...." But nowhere in the Introductory Commentary is there any reference to Chapter Four, *Part A* (Criminal History), in which § 4A1.2(k)(1) appears. Further, no language anywhere in Chapter Four indicates that the definition contained in § 4A1.2(k)(1) is intended to be applied outside of Chapter Four.

Third, and finally, the majority relies on our decision in *United States v. Jimenez,* 258 F.3d 1120 (9th Cir.2001). The obvious (and insuperable) problem with relying on *Jimenez* is that it did not construe § 2L1.2(b)(1), but, rather, 8 U.S.C. § 1101(a)(43)(F). When *Jimenez* was decided, § 2L1.2 contained no definition of sentence length. Rather, it relied on statutory definitions to give a 16–level increase for aggravated felonies and a 4–level increase for other convictions. *See* U.S.S.G. § 2L1.2 (2000) (superceded). The statute defines an "aggravated felony" as including "a crime of violence ... for which the term of imprisonment [is] at least one year," 8 U.S.C. § 1101(a)(43)(F), and it defines "term of imprisonment" as "the period of incarceration or confinement ordered by a court of law *regardless of any suspension* of the imposition or execution of that imprisonment or sentence in whole or in part." *Id.* § 1101(a)(48)(B) (emphasis added). Several circuits have relied on the explicit text of the statute to hold that a suspended sentence is included in a "term of imprisonment" for purposes of an aggravated felony. *See United States v. Pacheco,* 225 F.3d 148, 154 (2d Cir.2000); *United States v. Tejeda–Perez,* 199 F.3d 981, 982 (8th Cir.1999); *United States v. Banda–Zamora,* 178 F.3d 728 (5th Cir. 1999).

In contrast to its explicit inclusion of a suspended sentence in the definition of "term of imprisonment," the statute says nothing about a sentence imposed as a result of a violation of probation. Despite the statutory silence, we held in *Jimenez* that such a sentence is also included in a "term of imprisonment." *See* 258 F.3d at 1125 ("The fact that this term of imprisonment was not imposed until after [the defendant] violated his probation is not legally significant."). We are the only circuit to have so held. *Cf. United States v. Guzman–Bera,* 216 F.3d 1019, 1020–21 (11th Cir.2000) (stating hypothetically that a sentence imposed because of a probation violation might count as part of the "term

of imprisonment" if imposed prior to deportation and illegal reentry, but holding on the facts of the case that the sentence did not count because imposed after reentry).

After several circuits held that the statutory phrase "term of imprisonment" includes suspended sentences, and after we held in *Jimenez* that it also includes sentences imposed because of probation violations, the Sentencing Commission amended § 2L1.2. The amended Guideline retains an enhancement for a generic aggravated felony, but that enhancement is now reduced from 16 levels to 8. U.S.S.G. § 2L1.2 (b)(1)(C). Further, the Guideline now treats separately, for the first time, more and less serious drug trafficking offenses. If the defendant has previously been convicted of a drug trafficking offense for which the "sentence imposed" was more than 13 months, a 16–level enhancement is applied; if it was 13 months or less, a 12–level enhancement is applied. *Id.* § 2L1.2(b)(1)(A)-(B). The 16– or 12–level enhancement imposed in drug trafficking cases is in lieu of the 8–level enhancement for a generic aggravated felony. *Id.* § 2L1.2(b)(1).

In the amended Guideline, the Commission deliberately chose a new phrase to denote the measure of sentence length for drug trafficking offenses. The statutory phrase, used to distinguish between generic aggravated and non-aggravated felonies, was (and is) "term of imprisonment." This is the phrase we construed in *Jimenez.* However, the new Guideline phrase, used to distinguish between more and less serious drug trafficking offenses, is "sentence imposed."

The Sentencing Commission was fully aware of the change it was making. In amending § 2L1.2, the Commission explicitly rejected an initial proposal that would have used total time actually served as the measure of sentence length. *See* Sentenc-

ing Guidelines for the United States Courts, 66 Fed.Reg. 7962, 8009 (proposed Jan. 26, 2001); Minutes of the April 6, 2001 U.S. Sentencing Commission Business Meeting, U.S.S.G. § 2L1.2(b)(1). After rejecting the initial proposal, the Commission, clearly focused on this particular text, could have borrowed from the statute the phrase "term of imprisonment," which this court and others had already construed. It did not. Instead it adopted a new phrase, "sentence imposed," and provided a carefully tailored definition of that phrase excluding any portion of a sentence that was "probated, suspended, deferred, or stayed." Application Note 1(A)(iv).

The majority relies on *Jimenez* and concludes that the distinction between the statutory phrase "term of imprisonment" and the new Guideline phrase "sentence imposed" is inconsequential. But this conclusion is untenable. The Sentencing Commission's explicit definition of "sentence imposed" as *excluding* any suspended portion of the sentence is simply inconsistent with Congress's explicit definition of "term of imprisonment" as *including* any suspended portion of a sentence. I find it difficult to believe that the Commission adopted a new Guideline phrase, which it explicitly defined differently from the old statutory phrase, because it intended the former to carry the same meaning as the latter.

This is (or should be) an easy case. The amended Guideline, § 2L1.2(b)(1) contains a new phrase, "sentence imposed," that is carefully defined in Application Note 1(A)(iv). The phrase, as defined in the Note, has a plain meaning that excludes suspended sentences. I regret that the majority is unwilling to follow that plain meaning.