UNITED STATES of America,
Appellee,

v.

Juan Carlos HUERTA–MORAN, also
known as Francisco Lozano,
Defendant–Appellant.

Docket No. 02–1724.

United States Court of Appeals,
Second Circuit.

Argued: Aug. 28, 2003.

Decided: Nov. 26, 2003.

David A. Lewis, New York, New York,
for Defendant–Appellant.

W.S. Wilson Leung, Assistant United
States Attorney, for James B. Comey,
United States Attorney for the Southern
District of New York (Harry Sandick, Assistant United States Attorney, on the
brief), for Appellee.

Before: WINTER, CALABRESI, and
KATZMANN, Circuit Judges.

CALABRESI, Circuit Judge.

This appeal appears to present us with
the question of whether, for purposes of
United States Sentencing Guidelines
§ 2L1.2(b), the "sentence imposed" for a
prior drug trafficking conviction includes
time served after, as well as before, revocation of probation. Under that Guideline
provision, an earlier sentence of 13 months
or less gives rise to a 12–level enhancement; one greater than 13 months instead
requires a 16–level enhancement. *See*
§ 2L1.2(b)(1)(A) & (B). Because we find
that a post-revocation prison sentence that
is, by itself, longer than 13 months qualifies under § 2L1.2(b)(1)(A), and thus
yields a 16–level enhancement, we need
not reach the question put to us. On that

basis, we AFFIRM the sentence imposed by the district court.

*BACKGROUND*

In 1993, Defendant–Appellant Juan Carlos Huerta–Moran was convicted, in California state court, of criminal sale of marijuana, and sentenced to 150 days' imprisonment and three years' probation. After his release, in 1994, Huerta–Moran violated the terms of his probation and was sentenced to 182 days' imprisonment. In October 1994, he was deported to Mexico. He illegally re-entered the United States in 1995, at which time the California state court revoked his term of probation and re-sentenced him to two years' imprisonment.[1] After serving this third sentence, Huerta–Moran was deported again.

In January 2000, having once more entered the country in violation of his deportation order, Huerta–Moran was convicted of attempted assault in New York state court. Two years later, he was given over to federal custody. He pled guilty, in United States District Court for the Southern District of New York (Casey, *J.*), to illegal reentry after deportation following conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(b).

Huerta–Moran did not enter into a plea agreement. But prior to his guilty plea, he received a letter, pursuant to the suggestion of this Court in *United States v. Pimentel*, 932 F.2d 1029, 1034 (2d Cir.

1991), setting forth the government's position regarding the application of the Sentencing Guidelines. The *Pimentel* letter provided for a base offense level of 8 (§ 2L1.2(a)), plus a 16–level enhancement for a prior felony drug conviction with a sentence exceeding 13 months (§ 2L1.2(b)(1)(A)), minus three levels for his acceptance of responsibility (§ 3E1.1), for a total offense level of 21. The letter established an anticipated sentencing range of 57 to 71 months.

After Huerta–Moran's plea allocution, where the facts of the previous conviction and sentences were established, the Probation Office prepared a pre-sentence report (PSR). The PSR set forth calculations and recommendations identical to those contained in the *Pimentel* letter. Huerta–Moran did not object to or otherwise contest the contents of the PSR. At sentencing, after denying defendant's request for a downward departure, the court imposed a sentence of 65 months' imprisonment and three years of supervised release.

In reaching this result, the district court applied Section 2L1.2 of the United States Sentencing Guidelines, which governs sentencing in illegal reentry cases. The section was amended in November 2001 to create a graduated scheme of enhancements for predicate felonies. Before the amendment, § 2L1.2 mandated a 16–level enhancement in any illegal reentry case in which the original deportation followed conviction for an "aggravated felony."

---

1. It is not entirely clear from the record whether the two probation revocation sentences were *in addition to*, or *inclusive of*, the earlier time served. Thus, we cannot discern whether Huerta–Moran first served 150 days, then 32 days (bringing his sum total time served to 182 days) and then 548 days (bringing his total to two years), or first served 150 days, then an additional 182 days, and then an additional two years. Yet a third possibility is that he served 150 days, then another 182 days, and then 398 days (bringing his

total to two years). We note, however, that the outcome of this case does not hinge on an answer to this question. Under any of these scenarios, Huerta–Moran's third sentence— the second probation revocation sentence— exceeded 13 months. It was either a sentence of two years, or a sentence of 548 days (roughly eighteen months), or a sentence of 398 days (one year plus 33 days, hence just over 13 months). That his last sentence was longer than 13 months is the critical fact in this case.

The amended version of § 2L1.2, by contrast, assigns a 16–level enhancement only for certain felonies; among these are drug trafficking felonies "for which the sentence imposed exceeded 13 months." § 2L1.2(b)(1)(A)(i). Drug trafficking felonies "for which the sentence imposed was 13 months or less" give rise to a 12–level enhancement. § 2L1.2(b)(1)(B). Application Note 1(A)(iv) to this Section of the Guidelines attempts to clarify the term "sentence imposed" as follows: "If all or any part of a sentence of imprisonment was probated, suspended, deferred, or stayed, 'sentence imposed' refers only to the portion that was not probated, suspended, deferred, or stayed." [2]

On appeal, Huerta–Moran argues for the first time that the district court erred by applying a 16–level enhancement. He admits that his prior state conviction constitutes an "aggravated felony" and a "drug trafficking offense" under § 2L1.2, but contends that the "sentence imposed" was 150 days. Because of this, he asserts that he should have received a 12–level enhancement pursuant to § 2L1.2(b)(1)(B) (drug trafficking offenses with sentences of 13 months or less). Any time served upon revocation of probation, on his view,

should not affect the length of his "sentence imposed." The government, on the other hand, takes the position that any and all time served for the underlying drug trafficking offense should be aggregated in determining sentence length.

## DISCUSSION

■ The question on appeal, therefore, appears to be straight-forward: whether Huerta–Moran's two-year sentence, which he received upon revocation of probation, should be included in calculating the length of the "sentence imposed" under § 2L1.2(b).

The meaning of § 2L1.2(b) raises an issue of first impression in this circuit. But three of our sister circuits have faced the question and have held that the Guideline and application note "do not limit the sentence imposed to the sentence as it was originally imposed," and that there is "no reason to infer such a limitation from the wording of the provisions." *United States v. Moreno–Cisneros*, 319 F.3d 456, 458 (9th Cir.2003); *see also United States v. Ruiz–Gea*, 340 F.3d 1181 (10th Cir.2003); *United States v. Compian–Torres*, 320 F.3d 514 (5th Cir.2003).[3] All three circuits have concluded that the length of the "sentence

---

2. The Sentencing Commission recently submitted to Congress an amendment to the relevant application note—now 1(A)(iv), under the amendments 1(B)(vii)—which added, *inter alia*, this qualifier: "The length of the sentence of imprisonment includes any term of imprisonment given upon revocation of probation, parole, or supervised release." Office of the Special Counsel, United States Sentencing Commission, "Amendments to the Sentencing Guidelines," Part B, Amendment 7 (submitted to Congress May 1, 2003). The Commission describes this amendment as a clarification that is "consistent with the case law ... and the use of the term in Chapter 4." Of course, whether or not this amendment is "clarifying," or works a substantive change to the law, is a question for this Court. *See United States v. Guerrero*, 863 F.2d 245, 250 (2d Cir.1988). This amendment went into

effect on November 1, 2003. Given our disposition in this case, we need not consider whether the amendment clarifies or alters pre-existing rules.

3. In *Ruiz–Gea* and *Compian–Torres*, as in the instant case, the defendants received an initial sentence that was partially probated. In *Moreno–Cisneros*, the initial sentence was partially probated *and* partially suspended. There is some question about whether the later imposed sentence in *Moreno–Cisneros* should properly be characterized as a previously suspended or previously probated sentence. But as Judge Fletcher points out in his dissent, the analysis is precisely the same in either case. *Moreno–Cisneros*, 319 F.3d at 461 n. 1. For our purposes, then, this distinction is immaterial.

imposed," for purposes of § 2L1.2, is the sum of all prison time served, and includes not only the time originally imposed but also any additional time served for probation revocation. *See, e.g., Compian–Torres,* 320 F.3d at 515.

Under these holdings, then, district courts in the relevant circuits aggregate the original sentence and the probation revocation sentences to determine the total length of the "sentence imposed." [4] Take, for example, a case in which a defendant is first sentenced to five months in prison and two years probation. He is released, violates the terms of his probation, and is sentenced to another five months. He is again released, again violates the terms of his probation, and is sentenced to an additional five months. Pursuant to the Fifth, Ninth, and Tenth Circuit opinions, § 2L1.2(b)(1)(A)(i) applies in such a case, because the *aggregate* length of the sentence is 15 months (which, of course, is greater than 13 months).[5]

We, however, decline to reach the complicated question [6] of whether it is appro-

---

**4.** In each of the three cases, the length of the probation revocation sentence was itself longer than 13 months. But none of the three opinions limited its holding to those facts. Instead, all three agree that the appropriate interpretation of the guideline calls for *adding* the sentences together to arrive at a final length of the overall "sentence imposed." *See, e.g., Ruiz–Gea,* 340 F.3d at 1187 ("We conclude that the district court did not err when it considered the 1– to 15–year sentence imposed upon revocation of Defendant's probation to be *part* of the 'sentence imposed' for the 1997 drug-trafficking offense") (emphasis added); *Moreno–Cisneros,* 319 F.3d at 458 ("We can discern no basis for treating an original sentence of over thirteen months incarceration as more serious than a sentence of over thirteen months incarceration that consists of the original sentence plus the result of the revocation of probation.").

**5.** In *Moreno–Cisneros,* the Ninth Circuit relied heavily on an analogy to Guideline § 4A1.1, which determines criminal history category points. Section 4A1.1 states that points are added if the prior sentence of imprisonment exceeded thirteen months. U.S.S.G. § 4A1.1(a). Section 4A1.2(k)(1) provides: "In the case of a prior revocation of probation . . . add the original term of imprisonment to any term of imprisonment imposed upon revocation." U.S.S.G. § 4A1.2(k)(1). Noting this provision, the Ninth Circuit concluded Section 4A1.1 "argue[s] in favor of including the sentence imposed after revocation of probation in the calculation of the length of the 'sentence imposed' under § 2L1.2(b)(1)." 319 F.3d at 458.

In contrast, we have rejected the practice of using Section 4A1.1 as an interpretive guide for Section 2L1.2. Thus, in *United States v. Hidalgo–Macias,* 300 F.3d 281 (2d Cir.2002), we noted that "[o]ffense level determination is intended to serve a different purpose than criminal history calculation; the two are analyzed independently." *Id.* at 286. There is no "justification for consulting the criminal history rules in Chapter 4" for an explanation of a term in Chapter 2. *Id.See also United States v. Tappin,* 205 F.3d 536, 541 n. 6 (2d Cir.2000) ("[P]olicy concerns underlying the measure of the offense level and the calculation of the criminal history category justify the differing treatment of prior convictions") (internal quotation marks omitted).

**6.** *See United States v. Moreno–Cisneros,* 319 F.3d at 460–63 (Fletcher, *J.,* dissenting) (pointing out difficulties with the dominant position). The holdings of the Fifth, Ninth, and Tenth Circuits are also in some tension with our prior holding in *United States v. Valdovinos–Soloache,* 309 F.3d 91 (2d Cir. 2002) (per curiam) and a similar Third Circuit ruling in *United States v. Frias,* 338 F.3d 206 (3rd Cir.2003). These latter cases dealt with the situation in which the defendant had been sentenced to more than 13 months imprisonment, but was released on parole before serving a full 13 months. Both *Frias* and *Valdovinos* concluded that it is appropriate to look only to the *initial* sentence imposed for purposes of determining the length of the "sentence imposed" under § 2L1.2(b), and applied a 16–level enhancement. They rejected the idea, adopted by the Fifth, Ninth, and Tenth Circuits, of calculating the total prison time served. Of course, the parole context is different from revocation of probated or suspended sentences, but these two rules taken

priate to aggregate a series of sentences, each shorter than 13 months, some imposed before and some after revocation of probation, to arrive at a final "sentence imposed" that exceeds 13 months, thereby triggering § 2L1.2(b)(1)(A)(i). Instead, we restrict our inquiry to the limited issue of whether a probation revocation sentence that *itself* exceeds 13 months can count as the "sentence imposed" for a drug trafficking offense.

The defendant argues that the phrase "for which the sentence imposed was 13 months or less" in § 2L1.2(b)(1)(B) refers *only* to the underlying "drug trafficking offense," and not to subsequent conduct that leads to a revocation of probation. Put another way, he contends that "sentence imposed" must mean the *original* sentence imposed, and no other. The Commentary, on his view, supports this reading. Application Note 1(A)(iv) provides that the phrase " 'sentence imposed' refers only to the portion that was not probated...." Huerta–Moran reads this note as applying to the *initial* imposition of the sentence; the "sentence imposed" in his case was therefore a mere 150 days, with three years of the sentence "probated" and thus not counted for purposes of § 2L1.2(b), even if probation is ultimately revoked.

His argument, however, is unavailing. For the question before us, under the Guidelines, is the simple one: Was he convicted of a "drug trafficking offense for which the sentence imposed exceeded 13 months"? § 2L1.2(b)(1)(A)(i). To affirm imposition of the 16–level enhancement, one must find two things: (a) a "sentence imposed" for a "drug trafficking offense" that is (b) longer than 13 months. We believe that Huerta–Moran's third sen-

tence, imposed upon revocation of probation, clearly qualifies. This sentence plainly exceeded 13 months.[7] And, since under the law of this circuit, any punishment assessed for a violation of probation is actually imposed for the underlying conviction, *see, e.g, United States v. Hidalgo–Macias,* 300 F.3d 281, 285 (2d Cir.2002) (per curiam) (describing the "federal view" as holding that probation revocation sentences are imposed on the underlying offense), it would seem that this third sentence was for a drug-trafficking offense.

Huerta–Moran suggests, however, that the well-settled principle that probation revocation sentences are sentences for the underlying crime, should be set aside in deciding between 12– and 16–level enhancements under § 2L1.2(b). He asserts that the critical inquiry in the instant case is not whether, in general, "as a matter of common law or statutory law," a sentence upon revocation is linked to the underlying offense. Rather, the question is whether the Commission intended to distinguish between the original prison sentence imposed and that portion of the original sentence which was initially probated. Huerta–Moran notes that the cases tying probation revocation sentences to the original offense focused on constitutional questions such as double jeopardy, ex post facto laws, and due process, and did not address the sentencing issue raised here. On his view, calculation of the length of the "sentence imposed" should turn on congressional purpose, and this purpose should be determined without reference to the aforementioned general legal principle.

In making his congressional intent argument, Huerta–Moran observes that the November 2001 amendment to § 2L1.2(b)

---

together would create some anomalies that are not easily explained.

**7.** *See* note 1 *supra.*

sought to eliminate "disproportionate penalties" for less serious offenses. U.S.S.G.App. C., amend. 632. To sweep sentences imposed after probation revocation into the 16–level enhancement would thwart the Commission's goal of graduating enhancements "based on the seriousness of the prior conviction." *Id.* That he was subsequently sentenced to additional time in prison does not speak to the gravity of the underlying felony, he says, but rather to the variety of factors that go into revoking probation. He asserts that his original offense does not become more "serious" simply because he violated his probation.

Whatever the merits of defendant's argument with respect to situations in which a 13–month sentence is reached only by aggregating a series of sentences—for the original crime and for probation violations—this contention fails completely in a case like his in which the sentence imposed at the time of the probation violation *itself* exceeds 13 months. In such a case, a judge has deemed defendant's crime directly grave enough to warrant a sentence of more than 13 months. And while that sentence may be in part affected by the grounds surrounding the probation violation, it is also, and inevitably, informed by the nature of the original crime. It is, therefore, ineluctably imposed for a "drug trafficking offense." [8]

It is so imposed, that is, unless under California law the nature of the original crime that Huerta–Moran committed plays no part in the sentence assessed for his probation violation. But, in fact, California treats probation revocation in the same way as the Second Circuit. As a California appellate court explained, "[a] term imposed following revocation of probation,

... is imposed only for the original conviction offense and not the separate offense which caused probation to be revoked." *People v. Blunt,* 186 Cal.App.3d 1594, 1600, 231 Cal.Rptr. 588 (1986) (limited on other grounds). The *Blunt* court went on to note that the "seriousness of the [probation revocation conduct] has no bearing at all on the length of the term"—the length is determined according to the original crime and the original sentence. *Id. See also In re Marco A.,* 50 Cal.App.4th 1516, 1522, 58 Cal.Rptr.2d 540 (1996) ("[T]he most serious consequence that could befall a criminal probationer if probation is revoked is the imposition or execution of the judgment for the offense of which he was originally convicted."). With all of this in mind, defendant's arguments about the meaning of "sentence imposed" must fail.

■ Equally unavailing is Huerta–Moran's invocation of the rule of lenity. He contends that, at the very least, the term "sentence imposed" is ambiguous, and thus all "doubts are resolved in favor of the defendant." *United States v. Simpson,* 319 F.3d 81, 86 (2d Cir.2002) (internal quotation marks omitted) (applying the rule of lenity to the Sentencing Guidelines). We find that the term—like the Guideline and accompanying Commentary—is sufficiently clear. Under both our own precedent and California doctrine, which governs the underlying conduct in this case, a sentence upon revocation of probation is a sentence for the original offense. That is, for our purposes, blackletter law. Therefore, the third sentence imposed by the California state court for Huerta–Moran's drug felony constitutes a "sentence imposed" for a "drug trafficking offense" that "exceeded 13 months" under § 2L1.2(b)(1)(A)(i).

---

**8.** Defendant argument that "sentence imposed" applies to the *original* sentence, and that the Application Note applies to portions of sentences which are *initially* probated, fails because those words appear nowhere in the Guideline or Commentary.

772

## CONCLUSION

We limit our holding today to the following principle: a probation revocation sentence that, by itself, is longer than 13 months qualifies as a "sentence imposed" for a "drug trafficking offense" under § 2L1.2(b)(1)(A)(i), when the original sentence was itself for a drug trafficking offense. Huerta Moran's second probation revocation sentence exceeded 13 months, and he is therefore subject to the 16–level enhancement he received below. Because we find that the district court did not commit error, we AFFIRM its judgment.