**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**David BENITEZ–PEREZ,**
**Defendant–Appellant.**

**No. 03–10419.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 13, 2004.

Filed May 20, 2004.

Fred Atcheson, Reno, NV, for the appellant.

Craig S. Denny, Assistant United States Attorney, Reno, NV, for the appellee.

Before WALLACE, KOZINSKI, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

David Benitez–Perez appeals the district court's enhancement of his offense level by 16 levels pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(i) based on his prior conviction for violating Nevada Revised Statute § 453.337. We review the district court's decision that a prior conviction is a qualifying offense *de novo*, *United States v. Hernandez–Valdovinos*, 352 F.3d 1243, 1246 (9th Cir.2003), and we affirm.

## I

In the summer of 2002, local authorities in Reno, Nevada were dispatched to a motel on a domestic battery complaint. When officers arrived, Benitez–Perez, a citizen of Mexico, had already driven away from the scene. Upon his return, however, officers discovered that he had over a .12% blood alcohol content and 26.82 grams of methamphetamine in his vehicle. Benitez–Perez was convicted subsequently on November 6, 2002 of driving under the influence and Trafficking a Controlled Substance.

While Benitez–Perez was in state custody, immigration officials discovered that he was in the United States illegally, having been deported approximately ten years earlier for a previous drug offense. Consequently, Benitez–Perez was indicted by a grand jury for willfully being in the United States unlawfully in violation of 8 U.S.C. § 1326(a) after a previous arrest and deportation.

Benitez–Perez' prior arrest occurred in 1991, when he was charged with five counts of illegal drug-related activity, namely: (1) possession of a trafficking quantity of a controlled substance in violation of NRS § 453.3385 and § 453.3405; (2) possession of a controlled substance in violation of NRS § 453.336; (3) possession of a controlled substance for the purpose of sale in violation of 453.337; (4) unlawful sale of a controlled substance in violation of NRS § 453.321; and (5) conspiracy to sell a controlled substance in violation of NRS § 453.401. Ultimately, Benitez–Perez pled guilty to Count III of the Nevada Information and the other charges were dismissed. As a result, a final judgment was entered on January 22, 1992, determining that "David Benitez–Perez is guilty of the crime of Possession of a Controlled Substance For the Purpose of Sale as charged in Count III of the Information."

For his 1992 conviction, Benitez–Perez was sentenced to state prison for four years. Shortly after nine months in incarceration, Benitez–Perez was paroled and deported to Mexico.

Benitez–Perez also entered a guilty plea to the § 1326(a) charge before us. The Presentence Investigation Report (PSR) recommended a 16 offense level enhancement based on his 1992 "drug trafficking" offense pursuant to U.S.S.G. § 2L1.2(b)(1)(A). The PSR set Benitez–Perez' offense level at 21 after a three level reduction for acceptance of responsibility. Combined with a criminal history category of IV, the PSR recommended a sentence in the mid-range of the 57–71 month Guideline range.

Benitez–Perez objected to the 16 level enhancement, claiming that the prior Nevada conviction was not a qualifying predicate offense, and that he was paroled before his sentence exceeded 13 months as required by U.S.S.G. § 2L1.2(b)(1)(A)(i). He also objected to the calculation of the criminal history category.

After holding a sentencing hearing on July 11, 2003, the district court granted the objection on criminal history grounds and set the criminal history at category III. However, the district court imposed a 16 level enhancement, denying both objections to that adjustment.

In reaching this conclusion, the district court applied a two prong analysis considering (1) "whether the full range of [drug trafficking] conduct encompassed by the statute of conviction is punishable under the Controlled Substances Act"; and (2) if the statute criminalizes a greater amount of activity than punishable under the Controlled Substances Act, the court would examine "documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction for enhancement purposes."

Under this analysis, the district court was satisfied that the 1992 Nevada conviction was a crime "punishable under the Controlled Substances Act." The court also held that the crime was a felony because Benitez–Perez was sentenced to a term of four years. Since the court determined that "possession for sale" fit the definition of "drug trafficking" under the Guidelines, it denied the objection. The district court further explained that it found no authority that parole by an independent body could reduce Benitez–Perez' original sentence and render it inadequate for § 2L1.2(b)(1)(A)(i) purposes. Applying the enhancement, the district court set Benitez–Perez' offense level at 21 and, with a criminal history category III, the court calculated a sentencing range of 46–57 months and sentenced him to 51 months imprisonment.

Although it conducted the analysis that would have sustained the 16 level upward adjustment as recommended by the PSR, at the sentencing hearing the district court erroneously analyzed Benitez–Perez' § 2L1.2(b)(1)(A)(i) 16 level enhancement under an outdated "aggravated felony," rather than the applicable "drug trafficking," provision. However, neither the government nor the defendant called this error to the district court's attention. Final judgment was entered, and Benitez–Perez timely appealed.

## II

U.S.S.G. § 2L1.2(b)(1)(A)(i) provides for a 16 level enhancement if the defendant was previously deported after 6429 "a drug trafficking offense for which the sentence imposed exceeded 13 months." To qualify as a predicate drug trafficking offense, the prior conviction must violate:

[a] federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 2L1.2 Application Note 1(B)(iii) (2002). To determine whether a prior conviction qualifies as a predicate offense for the 16 level enhancement under § 2L1.2(b)(1)(A), we apply the categorical approach established in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). *See United States v. Pimentel–Flores*, 339 F.3d 959, 967–68 (9th Cir.2003) (holding the categorical approach applies to § 2L1.2 after the 2001 amendments).

In conducting a *Taylor* analysis, courts do not examine the underlying facts of the prior offense, but " 'look only' to the fact of conviction and the statutory definition of the prior offense." *United States v. Corona–Sanchez*, 291 F.3d 1201, 1203 (9th Cir. 2002) (en banc) (quoting *Taylor*, 495 U.S. at 602, 110 S.Ct. 2143). Thus, under this "categorical approach" we must first look to the statute of conviction to determine if the offense would qualify as a "drug trafficking" offense for § 2L1.2 purposes. In a "narrow range of cases" where the statute criminalizes conduct that would not constitute a drug trafficking offense, a modified categorical approach may be applied so the court can examine " 'documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction for enhancement purposes.' " *Id.* (quoting *United States v. Rivera–Sanchez*, 247 F.3d 905, 908 (9th Cir. 2001) (en banc)). Under the modified categorical approach, if "judicially noticeable facts would allow the defendant to be convicted of an offense other than that defined as a qualifying offense," it cannot be used to enhance a defendant's sentence. *Id.* (quoting *United States v. Casarez–Bravo*, 181 F.3d 1074, 1077 (9th Cir.1999)).

**1204**

■ Applying the *Taylor* analytical model to our case demonstrates unequivocally that the 1992 conviction qualifies as a drug trafficking offense that justifies the 16 level enhancement. Benitez–Perez's conviction was for a violation of NRS § 453.337.1 which provides that "it is unlawful for a person to possess for the purpose of sale ... any controlled substance classified in schedule I or II." Based on this statute of conviction, the only conduct criminalized is possession of a controlled substance for the purpose of sale. This crime fits comfortably within a drug trafficking offense as defined by § 2L1.2. *See Hernandez–Valdovinos*, 352 F.3d at 1248. Because the statute does not reach conduct outside of a drug trafficking offense under § 2L1.2, *Taylor's* categorical analysis is satisfied and the 16 level enhancement was properly applied.

Benitez–Perez argues that the intent of the drug trafficking provision of the Guidelines is aimed at an actual drug "trafficking" offense, and therefore the 1992 "possession for sale" conviction should not qualify. He notes that the specific charges of drug trafficking against him were dismissed. This argument, however, is foreclosed by the plain words of the guideline which includes as a qualifying offense possession with intent to distribute or dispense.

### III

Benitez–Perez also contends that the 1992 conviction cannot serve as a qualifying drug trafficking offense because he did not serve more than 13 months in prison, as required by § 2L1.2(b)(1)(A)(i). He points to a U.S.S.G. application note which provides that "[i]f all or any part of a sentence of imprisonment was probated, suspended, deferred, or stayed, 'sentence imposed' refers only to the portion that was not probated, suspended, deferred, or stayed." U.S.S.G. § 2L1.2 Application note 1(A)(iv) (2002). Based on this appli-

cation note, Benitez–Perez argues that "parole" is the equivalent of sentence suspension; thus, he reasons, his parole prior to serving 13 months disqualifies his conviction.

Although we have not previously addressed this specific argument, we have explained that "sentence imposed" for purposes of § 2L1.2(b)(1) means " 'the actual sentence imposed by the judge.' " *United States v. Moreno–Cisneros*, 319 F.3d 456, 459 (9th Cir.2003) (quoting *United States v. Jimenez*, 258 F.3d 1120, 1125 (9th Cir. 2001)). Thus, we held in *Moreno–Cisneros* that the sentence imposed by a judge does not include "good-time credits and similar nonjudicial (and thus difficult-to-ascertain) sentence adjustments." *Id.* at 459 n1. Analytically, there is no relevant difference between *Moreno–Cisneros* and the circumstance presented by this case.

Moreover, other circuits directly addressing Benitez–Perez' specific argument have resoundingly rejected parole as a sentence altering event. *See United States v. Frias*, 338 F.3d 206, 212 (3d Cir.2003) (holding that the "sentence imposed" means the maximum term of imprisonment in an indeterminate sentence even though a defendant may be paroled before serving a year in prison); *United States v. Mendez–Villa*, 346 F.3d 568, 570 (5th Cir.2003) (per curiam) (holding that "the plain language of the Guidelines and the authoritative commentary indicate that any portion of the sentence spent on parole shall be included in the calculation of the 'sentence imposed' per U.S.S.G. § 2L1.2(b)(1)"); *United States v. Rodriguez–Arreola*, 313 F.3d 1064, 1066–67 (8th Cir.2002) (applying the 16 level enhancement when a defendant served 8 months of an 8 month to 5 year sentence and explaining that parole does not alter the "sentence imposed," which means the sentence reflected in the criminal judgment, not the

sentence ultimately served); *United States v. Valdovinos–Soloache*, 309 F.3d 91, 93–95 (2d Cir.2002) (per curiam) (concluding the sentence imposed was the original 10 year sentence although defendant was paroled after serving only 5 months).

■ We agree with our sister circuits that the plain language of § 2L1.2 and its application notes do not support Benitez–Perez' argument that parole should qualify as a *"de facto* stay of the sentence." Rather, if the Sentencing Commission intended a "sentence imposed" to account for parole, it could have explicitly included it in Application Note 1(A)(iv) along with probation and suspension. As noted in *Frias*, probation, deferral, and stays "are similar to suspensions and differ from parole in the same way." *Frias*, 338 F.3d at 212. Accordingly, we hold that parole has no effect on the calculation of a qualifying offense under § 2L1.2.

## IV

■ The district court did not impose the 16 level enhancement under § 2L1.2(b)(1)(A)(i). Rather, the court incorrectly imposed the enhancement because Benitez–Perez's prior conviction constituted an aggravated felony as defined by 8 U.S.C. § 1101(a)(43). However, this portion of the Sentencing Guidelines had been amended two years earlier. In November 2001, U.S.S.G. § 2L1.2 was amended to provide for a "graduated scale of sentencing enhancements for various types of prior convictions." *United States v. Soberanes*, 318 F.3d 959, 962 (9th Cir. 2003). Prior to the amendments, the guideline imposed a 16 level enhancement if a prior predicate conviction was for an aggravated felony as defined by 8 U.S.C. § 1101(a)(43). *Id.* at 961–62; *see also* U.S.S.G. § 2L1.2 (2004) (citing the 2001 Amendment in the historical notes along with its application notes). The purpose of the 2001 amendment was to avoid dispro-

portionate penalties based on application of the 16 level enhancement to a broad spectrum of predicate offenses as defined by 8 U.S.C. § 1101(a)(43). Thus, the 16 level enhancement after November 2001 applied to a narrower class of prior felonies. U.S.S.G. § 2L1.2 (2004) (citing the Sentencing Commission's reason for the amendment). A district court must apply the version of the Sentencing Guidelines in effect on the date of sentencing, unless that would pose an *ex post facto* problem. *United States v. Alfaro*, 336 F.3d 876, 881 (9th Cir.2003); *United States v. Chea*, 231 F.3d 531, 539 (9th Cir.2000). Ordinarily, application of the incorrect version of the guideline would require us to vacate the sentence and remand for re-sentencing.

■ No party called this error to the district court's attention, nor to ours. Had the parties done so, there is no doubt that the extremely experienced and able district court judge would have immediately corrected the problem. Given that the record before us clearly demonstrates the error, we must decide whether sentencing under the superseded guideline constitutes plain error warranting vacation of the sentence. Plain error is: (1) error; (2) that was plain; and (3) affected substantial rights. *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). If the error satisfies these criteria, we are still not required to reverse unless the error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *United States. v. Alli*, 344 F.3d 1002, 1007 (9th Cir.2003) (citations and internal quotations omitted).

■ In this case, there was error and the error was clear. The district court used an incorrect guideline to impose the 16 level enhancement. However, the defendant's substantial rights were unaffected in this unusual circumstance because his objections applied equally to the two

guidelines, the objections were addressed by the district court, and the district court made findings that satisfied both guideline provisions. Thus, use of the incorrect guideline made no difference to determination of the enhancement. The district court made the appropriate findings, and the findings justify the 16 level enhancement under the correct version of U.S.S.G. § 2L1.2. None of the salient facts are at issue, and the legal objections were addressed specifically by the district court. Thus, the district court's application of the incorrect guideline provision did not constitute "plain error" in this case.

**AFFIRMED.**