UNITED STATES of America,
Appellee–Cross–Appellant,

v.

Alex KORMAN; Arthur Vetrano,
Defendants,

Nicholas Musto, Defendant–Appellant–
Cross–Appellee.

Docket Nos. 02–1466(L), 02–1526(XAP).

United States Court of Appeals,
Second Circuit.

Argued April 7, 2003.

Decided Sept. 15, 2003.

Michael S. Kim, Assistant United States Attorney, (James B. Comey, United States

Attorney for the Southern District of New York, Lawrence Gerschwer, Robin L. Baker, Assistant United States Attorneys, on the brief) New York, N.Y. for Appellee–Cross–Appellant.

William J. Stampur, Hurwitz Stampur & Roth, New York, N.Y. for Appellant–Cross–Appellee.

Before: WALKER, Chief Judge, OAKES, and WINTER, Circuit Judges.

JOHN M. WALKER, JR., Chief Judge.

Defendant–Appellant Nicholas Musto appeals from the judgment of conviction entered on August 14, 2002, in the United States District Court for the Southern District of New York, following a four-day jury trial before Thomas P. Griesa, *District Judge.* The government cross-appeals the sentence, contending that the district court erred in its decision to grant Musto a downward departure under § 5K2.0 of the Sentencing Guidelines ("U.S.S.G." or "the Guidelines") on the basis that Musto testified as a witness at a state grand jury proceeding. We uphold the judgment of conviction in a separate order filed today. In this opinion, we address only the government's cross-appeal. We vacate and remand for resentencing.

## BACKGROUND

On May 21, 2001, Nicholas Musto was found guilty after a jury trial of participating in two schemes to defraud an investment bank, Dean Witter, Reynolds, Inc. ("Dean Witter"), and to launder the proceeds of the fraud. The schemes operated between 1992 and 1996 and involved fraudulent withdrawals totaling $1.4 million from the "Unclaimed Interest Account" at Dean Witter. The jury found Musto guilty of conspiracy to commit wire fraud, con-

spiracy to launder money, money laundering, engaging in monetary transactions in property derived from specified unlawful activity and wire fraud, in violation of 18 U.S.C. §§ 371, 1343, 1956(a)(1)(B)(i) & (2), 1956(h), and 1957.

The Probation Office, applying the November 1, 1997 version of the Guidelines without objection, calculated the fraud counts for sentencing purposes as follows: The base-offense level was six pursuant to U.S.S.G. § 2F1.1, to which the loss of over $1.4 million added eleven levels pursuant to U.S.S.G. § 2F1.1(b)(1)(L).[1] Because the offenses involved more than minimal planning, two further levels were added pursuant to § 2F1.1(b)(2)(B), resulting in a total offense level of nineteen. As a second group, the money laundering count started with a base-offense level of twenty pursuant to § 2S1.1(a)(2), to which five levels were added pursuant to Guideline § 2S1.1(b)(2)(F) because the offense involved over $1.4 million, resulting in a total offense level of 25. Combining the two groups (fraud and money laundering) pursuant to U.S.S.G. § 3D1.4 resulted in a total offense level of 26. Because Musto had a Criminal History Category of III, his sentencing range was 78 to 97 months' imprisonment.

Musto moved for a downward departure pursuant to Guideline § 5K2.0 based on the assistance he provided to state law enforcement authorities in 1999, after he had been indicted for his involvement in the fraud against Dean Witter, when he testified before a state grand jury in connection with a 1972 killing. That murder was completely unrelated to the federal charges against Musto. The Kings Coun-

---

1.  U.S.S.G. § 2F1.1 was deleted by consolidation with § 2B1.1 effective November 1, 2001, which was before Musto was sentenced on July 31, 2002. Musto does not argue that the

district court's application of the Sentencing Guidelines was incorrect, so we decline to address this question in this opinion.

ty District Attorney's Office submitted a letter to the district court which stated:

> In 1972, Nicholas Musto was a bartender who knew both the victim and killer and was present shortly before the killing when the two met in the presence of the victim's brother.... Musto's testimony in the Grand Jury [in 1999] was essential to establishing the identification of the defendant, Joseph Carfagno, as the perpetrator.
>
> It would have been easy for a witness to claim, as some did, that he or she simply had no recollection of the event after passage of so much time. The voluntary cooperation of Mr. Musto was crucial to securing the indictment and resulted in the defendant, now 73 years old, entering a plea of guilty to Manslaughter in the First Degree and being sentenced to upstate incarceration.

After a hearing on July 31, 2002, the district court determined that Musto's testimony before the grand jury merited a downward departure from level 26 to level 23, under U.S.S.G. § 5K2.0, resulting in a Guideline range of 57 to 71 months imprisonment. The district judge then sentenced Musto to sixty months in prison. The government challenges this downward departure in its cross-appeal.

## DISCUSSION

### 1. Standard of Review

■ Before the passage of the "Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003" ("PROTECT Act"), Pub.L. No. 108–21, 117 Stat. 650 (2003), we reviewed downward departures for abuse of discretion. *See, e.g., Koon v. United States,* 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); *United States v. Riera,* 298 F.3d 128, 132 (2d Cir.2002). As we explained in *United States v. Khalil,*

> First, we determine whether the reasons articulated by the district court for the

departure are of a kind or a degree that may be appropriately relied upon to justify the departure. Second, we examine whether the findings of fact supporting the district court's reasoning are clearly erroneous. Finally, we review the departure for reasonableness, giving considerable deference to the district court.

214 F.3d 111, 124 (2d Cir.2000) (internal quotation marks and citations omitted). The first step under *Khalil* concerns questions of law, which we review *de novo. See United States v. Tropiano,* 50 F.3d 157, 162 (2d Cir.1995). In this case, the question before the court—whether testifying before a state grand jury, without more, is sufficient to support a downward departure—is a question of law to be reviewed *de novo.*

The PROTECT Act, which was signed into law on April 30, 2003, directs courts of appeals to "review de novo the district court's application of the guidelines to the facts." PROTECT Act § 401(d); 18 U.S.C. § 3742(e) at ¶ 2. Because the question presented on appeal is a question of law that we would review *de novo* in any event, we need not determine whether the PROTECT Act should apply to this case.

### 2. Guideline § 5K2.0 and Grand Jury Testimony

Judges are permitted to impose a sentence that departs from the Guidelines when "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b)(1). U.S.S.G. § 5K2.0 provides that a sentencing court may depart from the applicable guideline if it determines that the Commission has not given a particular factor adequate consideration "in light of unusual

circumstances," or if an offender's characteristic or other circumstance is present "to an unusual degree and distinguishes the case from the 'heartland' cases covered by the guidelines," U.S.S.G. § 5K2.0 (Policy Statement), but not otherwise, *see United States v. Sentamu*, 212 F.3d 127, 135 (2d Cir.2000).

■ In *United States v. Kaye*, we held that cooperation with local law-enforcement authorities provides a basis for a downward departure under Guideline § 5K2.0 but not under § 5K1.1, which concerns departures based on "substantial assistance in the investigation or prosecution," of a federal offense. 140 F.3d 86, 88 (2d Cir.1998) (quoting 18 U.S.C. § 3553(e)).

■ But cooperation with local law-enforcement authorities does not always merit a downward departure under § 5K2.0. In *United States v. Gaines*, we affirmed the district court's decision not to depart on the basis of assistance the defendant had provided a state prosecution several years prior to the defendant's federal prosecution. 295 F.3d 293, 303 (2d Cir. 2002). In order to justify a downward departure, "defendant's conduct [must be] so extraordinary that it falls outside the heartland of cases covered by the guidelines." *Id.* We held that "[b]ecause defendant's assistance occurred so long ago, his conduct was akin to a prior good deed, which is a discouraged basis for departure" under U.S.S.G. § 5H1.11. *Id.*

■ Following *Gaines*, we consider whether Musto's conduct in testifying before a grand jury was "extraordinary" and compare it to the factors which the Guidelines identify as not "ordinarily" supporting a downward departure. Under Guideline § 5H1.11, "Military, civic, charitable, or public service; employment-related contributions; and similar prior good works are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range."

■ We find that, in the ordinary case, testifying before a grand jury is similar to "civic, charitable, or public service" and therefore does not support a downward departure. In *United States v. Calandra*, for example, the Supreme Court characterized testifying in court as an ordinary civic duty: "The duty to testify has long been recognized as a basic obligation that every citizen owes his Government." 414 U.S. 338, 345, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Thus, in normal circumstances, the fact of providing grand jury testimony in a state prosecution does not remove a case from the heartland of Sentencing Guideline cases.

Moreover, in the instant case, there is nothing in the record to suggest that Musto's testimony was exceptional in any way such that it would support a departure. Musto simply testified that in 1972 he had seen three individuals, one of whom was murdered later that day, together at the bar where he worked at the time. While we do not rule out the possibility that testimony in certain cases such as those involving organized crime might involve enough personal risk that such testimony could provide a basis for a departure, routine testimony such as that provided by Musto in this case is not a basis for a departure under Guideline § 5K2.0.

In granting Musto a downward departure, the district court emphasized that Musto testified voluntarily. In particular, the district court relied on the letter from the Kings County District Attorney's Office which stated that "[i]t would have been easy for a witness to claim, as some did, that he or she simply had no recollection of the event after the passage of so much time." We disagree that this makes Musto's testimony "exceptional."

First, the fact that Musto could have been compelled to testify before the grand jury diminishes the importance of the fact that Musto testified voluntarily. The principal benefit to the state of Musto's willingness to testify was that local prosecutors did not have to file a subpoena. The fact that Musto was willing to testify is thus much less significant than other forms of cooperation which could not be compelled, such as assisting in an investigation by wearing a wire or offering an investigator fresh information that leads to an arrest and prosecution.

Second, the fact that Musto could have avoided testifying by falsely claiming that he did not recall what happened in 1972 does not render his testimony exceptional. Musto had a basic civic duty not only to testify before the grand jury but to testify truthfully. Simply because the passage of time made it believable for Musto to claim that he could not recall does not make his testimony exceptional. Instead, Musto's testimony falls among the basic civic duties for which no departure is warranted under the Guidelines.

Accordingly, we hold that the district court erred when it granted Musto a three-point downward departure.

## CONCLUSION

For the foregoing reasons, we VACATE the sentence and REMAND for resentencing not inconsistent with this opinion.