**UNITED STATES of America,
Appellant,**

v.

**Jose Armando LEIVA–DERAS,
Defendant–Appellee.**

**Docket No. 02–1628.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 5, 2003.

Decided Feb. 17, 2004.

---

Shawn J. Chen, Assistant United States Attorney, New Haven, Connecticut (Kevin J. O'Connor, United States Attorney, District of Connecticut, New Haven, Connecticut, of counsel), for Appellant.

Roger H. Sigal, Assistant Federal Public Defender, New Haven, Connecticut (Thomas G. Dennis, Federal Public Defender, New Haven, Connecticut, of counsel), for Defendant–Appellee.

Before: NEWMAN, CARDAMONE, and SOTOMAYOR, Circuit Judges.

CARDAMONE, Circuit Judge.

This appeal by the United States (United States or government) requires us to review a sentence imposed on defendant Jose Armando Leiva–Deras in the United States District Court for the District of Connecticut (Dorsey, J.) in a judgment entered September 13, 2002, following defendant's conviction for illegal reentry into the United States after being deported. We think, as the government contends, that the district court erred as a matter of law when it granted defendant a downward departure from the Sentencing Guidelines (U.S.S.G. or guidelines) based on the nature of defendant's underlying aggravated felony conviction and due to the fact that defendant's original sentence was for three months and was only increased to four years when his probation was revoked. Moreover, we agree with the government's contention that the sentencing court failed to make sufficient findings upon which to depart downward based on Leiva–Deras' unique motive for

not wanting to return to El Salvador on the grounds of personal safety.

The district court's attempt to avoid a substantial increase in a sentence for illegal reentry when that increase is based on a prior felony conviction for two separate sales of $10 worth of marijuana is understandable. The 16–level increase at issue here would impose a sentence of four to five years in prison (46–57 months recommended by the probation service), as opposed to a sentence of one to two years in prison (12–21 months) if the prior conviction was simply categorized as a regular felony. The severity of this increase reminds us of those scenes familiar in medieval times when a poor person steals a loaf of bread for his family and is promptly clapped into prison for a lengthy term. We think it was that sort of concern that prompted the district court's reduction, since the consequences of the defendant's prior conviction at first blush appear to lead to an offensive disproportion between crime and punishment, which the trial court thought was overlooked or unintended by the Sentencing Commission. But closer analysis reveals more to the case before us than appears initially.

## BACKGROUND

### A. *Facts*

Defendant Jose Armando Leiva–Deras, a citizen of El Salvador, was born there in Suchitoto on September 5, 1963. According to the Immigration and Naturalization Service (INS) he illegally entered the United States for the first time in July 1980. He was arrested nine years later on May 31, 1989 in Los Angeles, California for selling $10 worth of marijuana, on two separate occasions, to undercover police officers in violation of § 11360(a) of the California Health and Safety Code. On June 16, 1989 Leiva–Deras pled guilty to these violations and was sentenced to a three-year probationary period, with the first 180 days to be spent in jail. Defendant violated probation in December 1989 and that status was revoked in March 1991, resulting in a sentence of 4 years imprisonment.

While the revocation of his probation was pending, the INS instituted deportation proceedings against Leiva–Deras predicated on his conviction for violating a state law relating to a controlled substance. 8 U.S.C. § 1227(a)(2)(B)(i) (2000) (previously codified at 8 U.S.C. § 1251(a)(11) (1990)). On February 15, 1990 prior to revocation of his probation, defendant was deported to El Salvador. Subsequently, and before the revocation in March 1991 of his probationary status, defendant illegally entered the United States for the second time. While defendant was incarcerated in California due to the March 1991 probation revocation, the INS in May 1991 again commenced deportation proceedings and deported defendant back to El Salvador on February 24, 1993.

Four-and-a-half years later in September 1997, Leiva–Deras for the third time illegally entered the United States. On May 8, 2001 while in the custody of the Stamford, Connecticut police department, the INS was informed of his return and, on June 27, 2001, defendant was charged with one count of illegal reentry after deportation under 8 U.S.C. § 1326(a) (2000). In September 2001 the government filed a Notice of Enhanced Penalty, alleging that Leiva–Deras had a prior California conviction for sale of a controlled substance that constituted an aggravated felony under 8 U.S.C. § 1326(b)(2), and that he was therefore subject to up to 20 years imprisonment. On April 29, 2002 defendant pled guilty to the indictment.

### B. *Sentencing*

The presentence report (PSR) prepared by the U.S. Probation Department recom-

mended a base offense level of 8 for unlawfully entering or remaining in the United States, U.S.S.G. § 2L1.2(a) (2001); a 16–level enhancement for illegal reentry after conviction for a felony drug trafficking offense for which the sentence imposed was greater than 13 months, § 2L1.2(b)(1)(A)(i); and a 3–level reduction for acceptance of responsibility, § 3E1.1(a) & (b). These recommendations resulted in an adjusted offense level of 21 which, in conjunction with defendant's criminal history category of III, led to a range of 46 to 57 months imprisonment. Defendant's criminal history included prior convictions for the sale of marijuana, possession of drug paraphernalia and failure to appear, and pending state charges in New York for attempted robbery and criminal possession of a weapon, and for possession of burglary tools and stolen property; and in Connecticut for possession of narcotics, drug paraphernalia and breach of the peace.

On the eve of sentencing, Leiva–Deras filed a motion for downward departure alleging that he originally came to the United States, and continued to reenter, because of atrocities he had witnessed and injuries he himself had suffered in El Salvador during the 1960s and 1970s, and because of his fear that his life would be in danger were he to return there. These allegations were specifically outlined in a letter written by defense counsel and signed by defendant. The allegations included vivid examples of the human suffering he had witnessed in his home country and statements regarding the loss of his family members and his constant need to be on the run to escape capture. In its response to this motion, the government presented prior sworn affidavits of Leiva–Deras in which he stated he was in no danger in El Salvador and that his reason for not wanting to remain there was because there were no job opportunities.

At the sentencing hearing on September 12, 2002, the district court departed downward by 2 levels, resulting in a sentence of 30 months imprisonment. It ruled that: (1) the Sentencing Commission had not adequately considered this type of minor (in amount and moral turpitude) drug trafficking offense when it drafted the 16–level aggravated felony enhancement provision; (2) the original sentence imposed upon defendant was 6 months imprisonment, which does not reach the 13–month threshold required under the guidelines for the 16–level enhancement; and (3) the Sentencing Commission had not adequately considered a person with a personal safety motive for reentry as opposed to one that is purely economic when drafting the guidelines. The government has appealed the sentence imposed on defendant, challenging each of the district court's three rulings. We address each in turn.

## DISCUSSION

### I Seriousness of the Underlying Aggravated Felony

During the sentencing hearing, the district court stated that it believed treating all trafficking offenses equally and applying a 16–level increase across the board to all of them suggested that the Commission had not adequately considered an appropriate differentiation related to the factual bases upon which such a substantial increase would be applied. Despite contrary advice from counsel for both parties, the sentencing court insisted it would depart on this ground.

It rationalized its holding by saying that when Congress acted illogically, unreasonably and unfairly, it would try to "get around it, as long as it's legal to do so" because the $10 worth of marijuana at issue in this case was not substantial enough to justify a 16–level increase, and

the sentence the PSR recommended and the government supported was inconsistent "with the purpose of offense level calculations being designed to measure the moral turpitude that's involved [in the underlying aggravated felony]." One of the grounds upon which the sentencing court based its departure was the Sentencing Commission's alleged failure adequately to take into account the "proper sentencing considerations that would be involved ... at the extreme low end of drug trafficking conduct."

We begin analysis by noting that following the Supreme Court's decision in *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), we adhered to an abuse of discretion standard when reviewing a downward departure from the Sentencing Guidelines. *United States v. Bonnet–Grullon*, 212 F.3d 692, 700 (2d Cir. 2000); *United States v. Galante*, 111 F.3d 1029, 1034 (2d Cir.1997). On April 30, 2003, the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 (PROTECT Act) became effective. Pub.L. 108–21, 117 Stat. 650 (April 30, 2003) (codified at 18 U.S.C. § 3742(e) (West, WESTLAW through P.L. 108–152)). That Act directs us to review downward departures *de novo*. PROTECT Act § 401(d); 18 U.S.C. § 3742(e). Because the issue of whether the factor relied upon by the sentencing court is a permissible ground for departure is one that has always been reviewed *de novo*, we need not decide whether the PROTECT Act applies to appeals pending before April 30, 2003. *United States v. Korman*, 343 F.3d 628, 630 (2d Cir.2003).

Recently, we addressed the exact issue now before us in the instant case, namely, whether or not the district court erred when it departed based on its conclusion that the Sentencing Commission did not take into account the severity of an under-lying felony conviction when it drafted the graduated enhancement provisions of § 2L1.2(b) of the guidelines. In *United States v. Stultz*, 356 F.3d 261 (2d Cir.2004), argued on the same day as the argument in this case, we held that the district court erred in its conclusion. In *Stultz*, we ruled that the Sentencing Commission took the severity of the underlying felony into account when creating the graduated system of felonies in the 2001 amendments to U.S.S.G. § 2L1.2. *Stultz*, 356 F.3d at 265–68. Thus, we concluded the Commission intended the 16–level enhancement to apply to all felony convictions for trafficking controlled substances that resulted in imprisonment for a period of greater than 13 months. *Id.* at 266.

In this appeal, as in *Stultz*, defendant's prior crime was a felony drug trafficking offense for which the sentence imposed ultimately turned out to be greater than 13 months. First, the prior crime was a "federal, state or local offense punishable by imprisonment for a term exceeding one year." § 2L1.2, Application Note 1(B)(iv) (definition of felony). Under § 11360(a) of the California Health and Safety Code, "every person who transports, imports into this state, sells, furnishes, administers, or gives away ... marijuana shall be punished by imprisonment ... for a period of two, three or four years." Cal. Health & Safety Code § 11360(a) (West, WESTLAW through 2003–04 Reg. Sess.). Defendant's conviction for a state offense punishable by at least two years imprisonment meets the criteria for a felony conviction prescribed by the guidelines.

Second, defendant's prior crime was a drug trafficking offense, defined in the guidelines as an offense under federal, state, or local law forbidding the distribution of a controlled substance with intent to manufacture, distribute or dispense it. *See* U.S.S.G. § 2L1.2, Application Note

1(B)(iii). Defendant's conviction was for the sale of marijuana, a controlled substance under 21 U.S.C. §§ 802(6), 812(c), Sched.I(c)(10) (2000). Hence, it meets the criteria for a "drug trafficking offense" prescribed by the guidelines.

Finally, Leiva–Deras was originally sentenced to three years of probation and 180 days in jail for the offense. Later, after this probation was revoked, he was sentenced to 4 years imprisonment. Whether the sentence exceeds 13 months and was therefore sufficient to meet the requirements of § 2L1.2(b)(1)(A)(i) will be discussed in Part II.

## II Insufficiency of the Original Sentence

■ Discussion turns next to the trial court's determination that the "sentence imposed" for purposes of the 16–level increase mandated by U.S.S.G. § 2L1.2(b)(1)(A)(i) does not include a prison sentence imposed after probation revocation. Section 2L1.2(b)(1)(A)(i) of the guidelines requires a 16–level increase if the defendant reentered the United States after "a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months." At the sentencing hearing, the trial court stated that defendant's original sentence was less than 13 months and that the additional four-year period came from a violation of probation. It concluded that since the Sentencing Guidelines did not specifically identify a sentence based on a violation of

probation as a factor warranting an upward adjustment in the offense level, it would not take the sentence imposed following revocation of probation into account. Under the original sentence defendant's offense level increase would have been 12 instead of 16. § 2L1.2(b)(1)(B). The district court decided to depart downward by two levels.

In a recent decision addressing an issue similar to that raised in the case at hand, we held that "a probation revocation sentence that, by itself, is longer than 13 months qualifies as a 'sentence imposed' for a 'drug trafficking offense' under § 2L1.2(b)(1)(A)(i), when the original sentence was itself for a drug trafficking offense." *United States v. Huerta–Moran*, 352 F.3d 766, 772 (2d Cir.2003). Other circuits ruling on this issue have reached the same result. *United States v. Ruiz–Gea*, 340 F.3d 1181, 1185–87 (10th Cir. 2003); *United States v. Compian–Torres*, 320 F.3d 514, 516–17 (5th Cir.2003); *United States v. Moreno–Cisneros*, 319 F.3d 456, 458–59 (9th Cir.2003).[1]

In this case, the original sentence of 3 years probation with the first 180 days to be spent in jail was imposed for the sale of marijuana, which, under U.S.S.G. § 2L1.2, Application Note 1(B)(iii) and 21 U.S.C. §§ 802(6), 812(c), Sched.I(c)(10), is a drug trafficking violation. The probation revoked was the three years of probation imposed for that drug trafficking convic-

---

1. At oral argument, the defendant argued that this line of cases should not be followed. Instead, he maintains that the panel should rely on Judge William Fletcher's dissent in *Moreno–Cisneros* for the proposition that "sentence imposed," in the context of chapter two of the guidelines, applies to offense conduct, whereas "prior sentence of imprisonment," as used in chapter four of the guidelines, broadly refers "to a defendant's criminal history, and measures the seriousness of all of his prior bad acts." *Moreno–*

*Cisneros*, 319 F.3d at 462 (Fletcher, J., dissenting). Judge Fletcher reasoned that the term "prior sentence of imprisonment" applies broadly to include *all* periods of incarceration, "including incarceration resulting from probation violations," whereas "sentence imposed" is limited to the instant offense. *Id.* We disagree. In our view, the distinction between these two phrases is immaterial, given the plain language of § 2L1.2(b)(1)(A)(i).

tion. Therefore, since the original sentence was for a drug·trafficking offense, the four-year term of imprisonment imposed upon revocation of defendant's probation qualifies as a sentence imposed for a drug trafficking offense under the guidelines. It was error for the sentencing court to depart downward by two levels in part upon this ground. When resentencing defendant, the district court may not rely on this ground for any downward departure it might grant.

In sum, defendant's conviction clearly falls under the plain meaning of the guidelines, since it was a felony drug trafficking offense that resulted in a period of imprisonment of over 13 months. Because *Stultz* held that the Sentencing Commission had taken the seriousness of the felony—including the type of controlled substance at issue—into account when drafting the 2001 amendments to the guidelines, the district court's departure on the ground that this prior conviction was at the extreme low level of felony conduct and, therefore, fell outside of the heartland of reentry cases, must be held to be in error.

### III   Personal Safety Motive

#### A.   *Contentions At Hearing*

The final issue for review is the sentencing court's decision to depart downward based on Leiva–Deras' concerns for his personal safety. At the beginning of the sentencing hearing, the district court asked defense counsel if defendant's motion to depart was based on the fact that he reentered the United States illegally due to fear for his life and physical safety in El Salvador, as opposed to the reason most defendants reenter, that is, lack of

work in their home country. Counsel stated that it was fear and not lack of work that brought defendant to this country. During the sentencing hearing, the defendant spoke on his own behalf, repeating the allegations of human suffering and physical and emotional injury made in his letter, and showing the district court scars on his body that he declared resulted from shots fired at him in El Salvador.

■ The district court declined to pass judgment on this issue believing it was better addressed in an asylum proceeding, stating that its goal was to try to keep Leiva–Deras in the United States long enough to pursue such an asylum claim.[2] After hearing from the parties and before handing down the sentence, the district court conceded that the government was correct that there was no independent corroboration of defendant's allegations. However, it stated that, according to Leiva–Deras, his original entry and reentry was motivated

> to a very substantial degree, [by an] effort to get away from the inhumane conditions in which he was forced to live, and the safety risks to which his letter suggest he was subject.

Those are not contradicted in the record, and from the Court's general knowledge of conditions in El Salvador over the last couple of decades, his recitations are not without some reason and logic, and the marks that he has on him, reflective of the treatment that he did receive to some extent personally, tends to corroborate his story.

After the district court imposed sentence, the government objected to the

---

**2.** On November 19, 2003, we were advised that defendant was released from custody and deported back to El Salvador despite specific instructions to the contrary from the government. The defendant's release and deportation does not, however, make the government's appeal of his sentence moot. *United States v. Madrigal*, 331 F.3d 258, 259 (2d Cir.2003) (*per curiam* ); *United States v. Suleiman*, 208 F.3d 32, 37–38 (2d Cir.2000).

court's statement that there was nothing in the record to controvert defendant's allegations that he entered and reentered the United States only for reasons of personal safety. In challenging this statement, the government pointed out that there were sworn affidavits, presented by the defendant in Spanish, in which he averred that he came to the United States because there was no work in El Salvador and that he was not subject to personal harm there. In response, defense counsel asked the court to make a credibility determination as to defendant's statements.

The district court refused to do so, commenting that the defendant left him with a "positive impression" but that since there were some contradictions in his story, the judge thought it inappropriate for him to resolve credibility issues for fear his findings would have precedential effect in a subsequent asylum hearing. It went on to state, "Obviously, by the sentence that I've imposed, I've given him credit for the assertions that he's made, albeit ... I have not made a finding, in the final analysis, that ... the facts [are exactly] as he asserts them ...." After defense counsel asked for clarification in the event of an appeal, the district court stated that

> obviously from the appearance that he's made and the comments that he's made, ... [I] gave him some credit for the assertions that he ma[de], and I've indicated that he should have an opportunity to be heard with respect to them, particularly as they pertain to immigration matters, in a forum that can ultimately ... pass judgment on the truth ... of what he has asserted.

### B. *Contentions On Appeal*

■ The government insists these comments by the trial court did not constitute sufficient findings upon which it could base a downward departure for reentry

motivated by personal safety concerns. As stated in Part I, *supra*, we review *de novo* the grounds relied on by a sentencing court for its departure. The sentencing court may depart downward only if the circumstances of the defendant's case are such that they cause it to fall outside the heartland for the type of crime for which he was convicted. *Korman,* 343 F.3d at 630–31.

As an initial matter, it is unclear whether a departure based on the ground of personal safety is permissible as a matter of law. We have stated that 8 U.S.C. § 1326 is "designed to deter deported aliens from illegally reentering for *any* reason," and that as a result, the motive of a defendant convicted under that statute perhaps may not be a relevant sentencing factor. *United States v. Carrasco,* 313 F.3d 750, 755 (2d Cir.2002) (discussing 8 U.S.C. § 1326 in the context of a departure based on the "lesser harm" provision in U.S.S.G. § 5K2.11).

The defense suggests that we interpret the district court's decision in a broader fashion and categorize it as a departure based on the persecution of the defendant in El Salvador as opposed to his motive for reentering the United States. After reviewing the present record, we decline to interpret the district court's decision in this fashion. That court clearly stated it was basing its downward departure in part on its finding that the Sentencing Commission had not adequately considered the underlying facts with respect to the offense of reentry that might justify some differentiation between an illegal entrant motivated by economic concerns from the person with a motivation and background such as the defendant here presents.

Even if we were to accept the broader interpretation of the reason for departure urged by defendant, there is no case law clearly stating that such circumstances

would be enough, standing alone, to support a downward departure. The few cases that have addressed similar issues have analyzed situations where defendants are being sentenced for their first substantive crime—rather than for reentry—and where they have shown themselves to have benefitted their community in some way. *See United States v. One Star*, 9 F.3d 60, 61–62 (8th Cir.1993) (refusing to conclude that circumstances relied upon by the district court for its downward departure, including the difficult conditions of Indian reservation life, defendant's strong family ties and good employment record—factors not ordinarily relevant in a downward departure—were insufficiently unusual to warrant a departure); *United States v. Big Crow*, 898 F.2d 1326, 1331–32 (8th Cir.1990) (upholding a downward departure based on defendant's lack of prior criminal record, excellent employment history, solid community ties and consistent efforts to overcome adverse living conditions on an Indian reservation because, taken together, these were mitigating circumstances of a magnitude inadequately taken into account by the Sentencing Commission); *United States v. Somerstein*, 20 F.Supp.2d 454, 463–64 (E.D.N.Y.1998) (holding that presence of three factors, which may not alone justify a downward departure for fraud conviction, could be relied on when taken together: defendant's charitable efforts, exceptional work history, and experiences as a child victim of the Holocaust); *United States v. Vue*, 865 F.Supp. 1353, 1359–62 (D.Neb.1994) (granting downward departures to Hmong war refugees legally admitted into the United States from Laos who had fled their homeland to avoid persecution for supporting the democratic interests of the United States there).

The defendant, in contrast to the defendants who received downward departures in the above cases, not only has admitted to illegally reentering the United States more than once, but also has a criminal record of notable extent. Leiva–Deras' first arrest was in 1989 for the sale of marijuana and, after being deported to El Salvador, he reentered the United States. He remained incarcerated here until 1993 when he was once again deported to El Salvador. Defendant illegally reentered the United States again in 1997 and, since then, has been arrested a number of times for, *inter alia*, possession of drug paraphernalia, failure to appear, burglary, attempted robbery, possession of a weapon and stolen property, drug possession, and breach of the peace. His criminal record places him outside the category of individuals who have received downward departures for past persecution or difficult living conditions, since their departures were based in part on the aberrant nature of their crimes and their strong community ties.

Further, defendant raised his claims of past persecution for the first time on the eve of sentencing. In contrast to the defendants in *Somerstein* and *Vue*, both of whom were *admitted* to the United States as refugees from persecution, defendant entered this country illegally and, he concedes, has never made any effort to apply for asylum. As a consequence, he cannot rely on the United States government's conclusion—as the defendants in *Somerstein* and *Vue* can—that he is a refugee from persecution. Since Leiva–Deras does not have those characteristics relied upon by other courts that have granted downward departures in similar cases, we are doubtful whether a departure on this basis could be sustained in defendant's case.

Nonetheless, because we hold that the district court declined in the first place to make the necessary findings of fact upon which to base its downward departure for defendant's motivation for reentry, we

choose not to reach the issue of whether the circumstances, as they exist in the record before us, were sufficient on which to base a downward departure.

■ When a sentencing court departs from the applicable guidelines range, that departure must be based on specific, permissible reasons. *United States v. Thorn,* 317 F.3d 107, 125 (2d Cir.2003). The general presumption is that the defendant's circumstances are not unusual enough to justify departure. Hence, the defendant must provide evidence that shows his situation is outside the heartland of the applicable guidelines. *United States v. Bryson,* 163 F.3d 742, 748 (2d Cir.1998); *see also United States v. Smith,* 174 F.3d 52, 55–56 (2d Cir.1999) ("Generally, under the Sentencing Guidelines, a defendant who seeks to take advantage of a sentencing adjustment carries the burden of proof."). The facts relied on to depart must be established by a preponderance of the evidence, *United States v. Jacobo,* 934 F.2d 411, 418 (2d Cir.1991), and those findings will be reviewed for clear error. *United States v. Abreu–Cabrera,* 64 F.3d 67, 74 (2d Cir. 1995).

■ Moreover, when a district court proceeds to resolve a disputed issue of fact during sentencing, there is the additional requirement that it must declare its findings with sufficient clarity that an appellate court can review them. *Thorn,* 317 F.3d at 125; *United States v. Reed,* 49 F.3d 895, 900–01 (2d Cir.1995). "Where the sentencing judge neither clearly resolves the disputed issue nor explicitly relies on factual assertions made in a PSR, we must remand for further findings." *Id.* at 901.

■ We agree with the government that the district court abdicated its factfinding responsibilities in this case. This is clear from statements such as: "I'm not passing judgment on the truth of what he claims [were] the circumstances down there."; and "I'm not gonna decide, as a question of fact, whether what he said in those affidavits is correct. I recognize that he may very well be contriving to stay in the United States."; and "I don't think it's appropriate for me to resolve credibility issues at this juncture ... I have not made a finding, in the final analysis, that ... the facts [are exactly] as he asserts them ...."

It appears therefore that the district court was presented with two opposing sets of statements from the defendant regarding his motive for reentry into the United States. It had an obligation to determine which statements were truthful before it decided to depart downward based on Leiva–Deras' alleged personal safety motive for reentering the United States. Only if the trial court had determined that the facts as defendant had stated them in his downward departure motion were true could it make the necessary finding that Leiva–Deras showed mitigating circumstances taking his case out of the heartland of a typical illegal reentry case. While refusing to resolve a disputed issue of fact, the sentencing court nevertheless took the controverted issue into account when it granted the downward departure. For this reason, we hold the district court erred in granting the downward departure.

We are aware that our opinion will require the trial court, when resentencing defendant, to make the very findings of fact it feared would have a precedential effect in any future asylum proceeding. We do not address the issue of whether defendant is statutorily ineligible for asylum, as the government contends. In addition, we do not address the issue of whether sentencing findings would have a preclusive effect in a later immigration

proceeding. We do not address these issues because under our precedents, as stated above, if the district court decides to grant a downward departure on this ground, findings will need to be made, no matter what the result. *Cf. United States v. Aleskerova,* 300 F.3d 286, 301 (2d Cir. 2002) (holding there is "nothing extraordinary in nature or degree about the uniform application of the immigration laws," that allows a defendant to argue that the threat of persecution or the inability to avail oneself of the benefits of the immigration laws provide a permissible basis for departure from the guidelines). When determining the issues before it in a criminal proceeding, a sentencing court may not take the fact that a defendant has a pending or potential asylum claim into account to such an extent that the law is ignored in the process.

## CONCLUSION

For the foregoing reasons, defendant's sentence is remanded. Defendant, under Federal Rule of Criminal Procedure 43, has a right to be present at his sentencing. This cannot occur while he is in El Salvador. Accordingly, we direct the government, within 90 days of discovering that Leiva–Deras has reentered the United States, to apply for resentencing in accordance with this opinion. *See Madrigal,* 331 F.3d at 261.

Sentence remanded.