**UNITED STATES of America,**
**Appellant,**

v.

**Christos KOSTAKIS, Defendant–**
**Appellee.**

**Docket No. 02–1647.**

United States Court of Appeals,
Second Circuit.

Argued: June 25, 2003.

Decided: April 2, 2004.

As Amended April 5, 2004.

Andrew J. Frisch, Assistant United States Attorney (Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, David C. James, Assistant United States Attorney, and Thomas L. Sansonetti, Assistant Attorney

General, Environmental & Natural Resources Division, United States Department of Justice, on the brief), Brooklyn, NY, for Appellant.

Kevin F. Clines, Hughes, Hubbard & Reed, LLP (Edward J.M. Little on the brief), New York, NY, for Defendant–Appellee.

Before: STRAUB and POOLER, Circuit Judges, HURD, District Judge.*

POOLER, Circuit Judge.

Christos Kostakis, a Greek engineer working on a Bahamian-flagged and Greek-owned oil tanker, the Alkyon, falsified log entries to conceal the ship's discharge of oil-contaminated bilge water into international waters. The Coast Guard detected this practice on a routine inspection when the ship docked in New York on January 17, 2002. Kostakis later pleaded guilty to one count of making a materially false statement on a matter within the jurisdiction of the United States in violation of 18 U.S.C. § 1001. At Kostakis's sentencing, the government urged the court to add a six-level enhancement to his offense level because a substantial part of the scheme occurred outside the United States. *See* U.S.S.G. § 2B1.1(b)(8)(B). Without explicitly deciding whether the enhancement applied, or whether Kostakis merited a two-level credit for acceptance of responsibility, the district court (Allyne J. Ross, *Judge* ) determined that if it were to adopt the government's version of the facts (and, thus, apply the enhancement), the court would grant Kostakis a six-level downward departure because his conduct was outside the heartland of the conduct envisioned by the enhancement.

The government's appeal requires us to decide whether the de novo review stan-

dard for departures, imposed by the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003, Pub.L. No. 108–21, 117 Stat. 650 (2003), codified at 18 U.S.C. § 3742(e)(3)(B) ("PROTECT Act" or the "Act"), applies to the review of sentences imposed before the Act became effective. Principally, because the de novo review standard neither criminalizes conduct that was not criminal when committed nor applies a greater penalty than could have been imposed at that time, we hold that the PROTECT Act's de novo standard controls the outcome of this appeal. Applying the de novo standard of review to the facts the district court assumed to exist, we find that its departure was impermissible. However, we vacate and remand so that the district court may find the facts necessary to determine whether the enhancement should apply, whether Kostakis is entitled to a credit against his offense level for acceptance of responsibility, whether the facts as the court finds them justify a departure on the grounds the court originally used, and whether Kostakis should receive a departure based on a combination of circumstances, the ground he originally proposed. Given the unique procedural posture of this case, we also hold that the section of the PROTECT Act that limits the district court on remand to departures that it previously relied on and that this court has specifically approved does not apply retroactively.

## BACKGROUND

After his arrest, Kostakis was briefly held in detention and then not allowed to leave the country pending the resolution of the charges against him. On May 7, 2002, Kostakis executed a plea agreement with

---

* The Honorable David N. Hurd, United States District Judge for the Northern District of New York, sitting by designation.

the government. He agreed to plead guilty to a one-count information, which charged:

> In or about and between October 2001 and January 2002, both dates being approximate and inclusive ... CHRISTOS KOSTAKIS ... did knowingly and willfully make and use a false writing and document in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit, the United States Coast Guard, knowing the same to contain materially false, fictitious and fraudulent statements and entries in that the defendants stated and represented in the Alkyon's Oil Record Book for the period October 24, 2001 to January 16, 2002 that all of the Alkyon's oily bilge water had been processed in its oil-water separator, when in fact, as the defendants then and there well knew and believed, the defendants had caused oily bilge water from the Alkyon to be discharged directly into the sea without being processed in the ship's oil-water separator.

In the agreement, the government calculated Kostakis's adjusted offense level at ten by estimating a base offense level of six pursuant to U.S.S.G. § 2B1.1(a), which applies to offenses involving fraud or deceit, adding six levels because a substantial part of the scheme occurred outside the United States pursuant to U.S.S.G. § 2B1.1(b)(8), and deducting two levels for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. The government further agreed that it would take no position concerning where within the Guidelines range Kostakis's sentence should fall. If the ultimate Guidelines range was in Zone A or B of the sentencing chart, the government agreed to "not oppose a motion for a downward departure based on a combination of circumstances, including the defendant's required presence in the United States since January 30, 2002."

Kostakis pleaded guilty to making a materially false statement in violation of 18 U.S.C. § 1001 pursuant to the agreement, but claimed that he did not begin to make false statements until "the Oily Water Separator broke down" in December 2001. Kostakis's attorney then submitted a sentencing memorandum to the court arguing that because Kostakis had only falsified the log book once, the enhancement proposed by the government, which was for the commission of a substantial portion of a scheme outside the United States, did not apply. Kostakis's attorney also asked for a downward departure based on the allegedly frightening circumstances of his nine-day pretrial detention and Kostakis's prolonged separation from his family in Greece.

The government maintained that the enhancement did apply and that Kostakis was not entitled to a two-level credit for acceptance of responsibility because he inaccurately minimized the extent of his conduct both when he pleaded guilty and in his sentencing memorandum. Kostakis's attorney responded by claiming responsibility for any inaccurate diminishment of Kostakis's responsibility. The attorney explained that he had focused on a single January 14, 2002 false statement because he had discussed that date with a government attorney. He emphasized that Kostakis did not claim his conduct was limited to a single statement and that Kostakis had admitted to the court that he made "false statements." On September 4, 2002, the government informed the court by letter that it believed a hearing was required "to sort through [the] disputed facts" in the parties' sentencing memoranda.

On September 27, 2002, at the beginning of Kostakis's sentencing, United States

District Judge Allyne Ross announced that she was contemplating a downward departure on a basis implicitly but not explicitly urged by Kostakis, that the enhancement literally applied to Kostakis's conduct but that his circumstances were outside the heartland contemplated by the Guidelines. For purposes of considering this departure, the court accepted the accuracy of the government's proffer, which summarized evidence suggesting that all of Kostakis's log entries from April 2001 to January 2002 were inaccurate and that he had instructed his subordinates to dump oily water directly into the sea.

The court held that, if after a hearing it accepted the government's proffer as true, it would find that the enhancement applied. In that event, however, the court indicated that it would grant Kostakis a six-level departure based primarily on its conclusion that U.S.S.G. § 2B1.1(b)(8)(B) contemplates, although it does not explicitly require, sophisticated conduct. The court's first reason for this conclusion was the Guideline's overall language. Section 2B1.1(b)(8) provides for an addition of two offense levels, or if the offense level otherwise would be under twelve, to twelve, if:

> (A) the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials; (B) a substantial part of a fraudulent scheme was committed from outside the United States; or (C) the offense *otherwise* involved sophisticated means . . . .

U.S.S.G. § 2B1.1(b)(8) (2001) (emphasis added). The court reasoned that the use of the word "otherwise" in clause (C) indicates that the Sentencing Commission assumed that a scheme described in clause (A) or clause (B) would most often be sophisticated. The district court next turned to the application note to the Guidelines captioned, "Sophisticated Means Enhancement under Subsection (b)(8)," [1] and noted:

> [t]hat the title of the Application Note referring to all three bases for the Subsection (b)(8), *including the enhancement under part (B) for crimes committed substantially extraterritorially, describes that enhancement under part (B) as one for 'sophisticated means'* reinforces the inference that in the Commission's view, all three categories of offenses set forth in the subsection apply to schemes committed by sophisticated means.

The court also relied on the background section for the Guidelines, which states that it was enacted in response to Section 6(c)(2) of Public Law 105–184, which directed the Sentencing Commission to "provide an additional appropriate sentencing enhancement, if the offense involved sophisticated means, including but not limited to sophisticated concealment efforts, such as perpetrating the offense from outside the United States." The district court further reasoned that the commentary to Amendment 577, the amendment which added the enhancement, focused on the use of foreign locations by telemarketers.[2]

---

1. At the time of Kostakis's sentencing, the application note relied on by the district court was denominated Application Note 6. This note is now denominated Application Note 7 in the current version of the Guidelines. *See* U.S. SENTENCING GUIDELINES MANUAL § 2B1.1 (2003), Application Notes 7, "Sophisticated Means Enhancement under Subsection (b)(8)".

2. This commentary states:
 [T]his amendment provides an increase for fraud offenses that involve conduct, such as sophisticated concealment, that makes it difficult for law enforcement authorities to discover the offense or apprehend the offenders. The new enhancement provides a two-level increase and a "floor" offense level of level 12 in the fraud guideline and replaces the current enhancement for "the

Finally, the court found that the scanty case law interpreting Section 2 B1.1(b)(8) was not inconsistent with its position.

Concluding that Kostakis's conduct was "of the simplest possible form," the court departed downward by six levels to eliminate the effect of the enhancement. It then said, "even assuming [Kostakis was] not accorded a two-level deduction for acceptance of responsibility, it would make no difference in terms of the sentence, his base offense level would still be 6 . . . with a sentencing guideline range of zero to six months." The court then sentenced Kostakis principally to time served. The judgment of conviction reflects that the court accepted the factual findings and Guideline application in the presentence report, found a total offense level of six, and departed downward for the reasons stated on the record.

The government filed a timely notice of appeal. On appeal, the government contends that the district court erred both by finding that unsophisticated conduct was outside the heartland of Section 2B1.1(b)(8) and by finding that Kostakis's conduct was unsophisticated. Kostakis, of course, differs. In addition, he argues that the government's opposition to the departure below and before this court breached the plea agreement. While this matter was being briefed, the PROTECT Act became effective, thereby raising the issue of the appropriate standard of review for the district court's downward departure.

## DISCUSSION

As a preliminary matter, we note that the plea agreement does not prevent the government from challenging the district court's sua sponte departure either below or on appeal. The agreement precluded the government from opposing Kostakis's motion for a departure based on a combination of circumstances if the district court placed Kostakis's sentencing range in Zone A or Zone B. The district court, however, assumed that the enhancement was applicable and that Kostakis should not receive credit for acceptance of responsibility, assumptions that result in a total offense level of twelve, within Zone ·C. *See* U.S.S.G. Ch. 5, Pt. A, Sentencing Table. Moreover, the court did not even consider Kostakis's combination-of-circumstances departure motion. Instead, it departed on a ground that it raised itself. Accordingly, because under these circumstances, the plea agreement did not bar the government from opposing the departure, we find that our consideration of the government's appeal is proper.

 With respect to the governing standard of review, we note that prior to

---

use of foreign bank accounts or transactions to conceal the true nature or extent of fraudulent conduct." There are three alternative provisions to the enhancement. The first two prongs address conduct that the Commission has been informed often relates to telemarketing fraud, although the conduct also may occur in connection with fraudulent schemes perpetrated by other means. Specifically, the Commission has been informed that fraudulent telemarketers increasingly are conducting their operations from Canada and other locations outside the United States. Additionally, testimony offered at a Commission hearing on telemarketing fraud indicated that telemarketers often relocate their schemes to other jurisdictions once they know or suspect that enforcement authorities have discovered the scheme. Both types of conduct are specifically covered by the new enhancement. The third prong provides an increase if any offense covered by the fraud guideline otherwise involves sophisticated concealment. This prong addresses cases in which deliberate steps are taken to make the offense, or its extent, difficult to detect.

U.S.S.G. app. C (2003).

the passage of the PROTECT Act, we reviewed a district court's departure from the Sentencing Guidelines for an abuse of discretion, affording "substantial deference" to the district court. *See Koon v. United States,* 518 U.S. 81, 98, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); *United States v. Korman,* 343 F.3d 628, 630 (2d Cir.2003). The recently enacted PROTECT Act requires us to apply a de novo standard of review when the sentence imposed is outside the applicable Guideline range to determine "whether a departure is 'justified by the facts of the case.'" *United States v. Simmons,* 343 F.3d 72, 78 (2d Cir.2003) (quoting PROTECT Act, § 401(d)).[3] However, our review of the extent or degree of such a departure continues to be for abuse of discretion. *See United States v. Anderson,* 353 F.3d 490, 507 (6th Cir.2003) (per curiam); *United States v. Barresi,* 361 F.3d 666, 671 (2d Cir.2004) (observing that even after the passage of the PROTECT Act, "the court of appeals ... shall give due defense to the district court's application of the guidelines to the fact[s]") (quoting 18 U.S.C. § 3742(e)(3)(C)). We continue to review the factual findings supporting the district court's departure for clear error. *See United States v. Leung,* 360 F.3d 62, 71 (2d Cir.2004) (citing 18 U.S.C. § 3742(e)); *United States v. Long Turkey,* 342 F.3d 856, 859–60 (8th Cir.2003) (holding that the district court's factual findings for sentencing were reviewed for clear error even following the passage of the PROTECT Act); *United States v. Stockton,* 349 F.3d 755, 764 (4th Cir.2003) (same).

Kostakis committed his offense and the district court sentenced him prior to the effective date of the PROTECT Act. We therefore take this occasion to join the other circuits that have considered this issue and have uniformly held that the PROTECT Act applies to cases pending on appeal when the Act was enacted. *See Frazier,* 340 F.3d at 14; *Stockton,* 349 F.3d at 764 n. 4; *Bell,* 351 F.3d at 675; *United States v. Mallon,* 345 F.3d 943, 946–47 (7th Cir.2003); *United States v. Hutman,* 339 F.3d 773, 775 (8th Cir.), *cert. denied,* —— U.S. ——, 124 S.Ct. 842, 157 L.Ed.2d 720 (2003); *Gonzales–Ortega,* 346 F.3d at 802; *United States v. Andrews,* 353 F.3d 1154, 1155 & n. 2 (10th Cir.2003), *petition for cert. filed,* No. 03–8863, 2004 WL 264251 (Feb. 5, 2004); *United States v. Saucedo–Patino,* 358 F.3d 790, 792 (11th Cir.2004). The Act's change in the standard of review is "properly characterized as procedural rather than substantive and therefore can be applied to a pending appeal without violating the Ex Post Facto clause because it neither increases the punishment nor changes the elements of the offense or the facts that the government must prove at trial." *Hutman,* 339 F.3d at 775 (internal quotation marks and indications of alterations from original omitted). Accordingly, although Kostakis was sentenced before the PROTECT Act became law, because the Act is procedural in nature, it applies to his appeal.

Applying the de novo standard of review solely *to the facts the district court assumed to exist,* we find that the district court's departure was impermissible be-

---

**3.** Notably, two circuit courts have held that the PROTECT Act's de novo standard of review is only applicable when the sentence imposed is outside the applicable guideline range *and* the departure has not been justified in a written order or the departure is based on a factor that: "does not advance the objectives set forth in section 3553(a)(2)"; "is not authorized under section 3553(b)"; or is simply "not justified by the facts of the case." *United States v. Gonzales–Ortega,* 346 F.3d 800, 801–02 (8th Cir.2003) (quoting PROTECT Act); *United States v. Bell,* 351 F.3d 672, 675–76 (5th Cir.2003). In this case, the district court did not provide the requisite written statement of reasons for departing in the judgment so the de novo standard of review would apply even under the rule adopted in *Gonzales–Ortega* or *Bell.* As Such we express no views on the appropriateness of this line of cases in this opinion.

cause, as described in the government's proffer, Kostakis's conduct appears to have been rather sophisticated. The government alleged that Kostakis made false entries in two oil record books between April 16, 2001 and January 16, 2002, on thirty separate occasions. These entries concealed the fact that Kostakis routinely instructed his subordinates to dump oily water directly into the sea, most often at night. These falsified entries had numerous technical components, and were made with the purpose of deceiving the Coast Guard. The government further alleged that upon apprehension Kostakis made false statements regarding these activities to the Coast Guard and hid equipment used to discharge the oily water into international waters.

However, the district court did not find these facts; it simply assumed them to be true. Our review of Kostakis's sentence is complicated by the fact that the district court did not make factual findings necessary to support the imposed sentence. In arriving at a sentence, the Guidelines require the sentencing court, insofar as relevant here, to: (1) determine the appropriate offense Guideline; (2) set the base offense level and apply appropriate specific offense characteristics—such as the enhancement for extraterritorial conduct; (3) apply the adjustment for acceptance of responsibility; (4) determine the appropriate criminal history category; (5) find the appropriate Guidelines range for sentencing; and (6) consider departures. *See* U.S.S.G. § 1B1.1. Here, the district court's failure to adhere to this procedure handicaps us in several ways. For instance, allegations in the government's proffer would justify application of the enhancement and preclude a downward departure on the ground that Kostakis's conduct is outside the heartland of Section 2b1.1(b)(8)(B). However, because the district court did not find these facts to be

true, we cannot simply remand for resentencing and order the district court to apply the enhancement and deny the departure. Given different facts, a different outcome may be required. In addition, if the court had found that Kostakis accepted responsibility for his criminal conduct, his sentencing range would have been within Zone B rather than Zone C, even if the court applied the enhancement for extraterritorial conduct. Under these circumstances, the government would be precluded by the plea agreement from opposing the resulting sentence. Finally, the court did not rule on Kostakis's motion to depart on other grounds.

We do not comment on whether the district court correctly found that unsophisticated conduct falls outside the heartland of the 6-level enhancement found in U.S.S.G. § 2B1.1(b)(8)(B). As discussed above, there are no facts supporting the district court's finding that Kostakis's conduct was not complex; indeed, the government's proffer suggests otherwise. Thus, rather than ruling on a hypothetical case, we reserve decision on whether such a departure is appropriate for a case where the defendant's conduct is actually found to be unsophisticated.

Accordingly, we hereby vacate and remand so that the district court may conduct a sentencing hearing and make findings in accordance with the step sentencing procedure set forth in U.S.S.G. § 1B1.1. In doing so, the sentencing court should specifically rule on the following issues: (1) whether Kostakis's conduct fell within Section 2B1.1(b)(8)(B); (2) whether Kostakis should receive a two-level adjustment for acceptance of responsibility; (3) whether the facts as the court finds them justify a departure on the grounds the court originally used; and (4) whether Kostakis should receive a departure based on a combination of

circumstances, the ground he originally proposed.

■ As a final matter, we note that the PROTECT Act, amending 18 U.S.C. § 3742, limits the authority of a district court to impose a sentence outside the applicable Guideline range upon a remand from a court of appeals. *See* PROTECT Act, § 401(e). The new subsection (g) of section 3742 provides:

> Sentencing upon remand—A district court to which a case is remanded pursuant to subsection (f)(1) or (f)(2) [which includes impermissible or unreasonable departures] shall ... (2) ... not impose a sentence outside the applicable guidelines range except upon a ground that-(A) was specifically and affirmatively included in the written statement of reasons required by section 3553(c) in connection with the previous sentenc[e] ...; and (B) was held by the court of appeals, in remanding the case, to be a permissible ground of departure.

18 U.S.C. § 3742(g). This provision cannot apply in this case without invoking serious constitutional concerns. The district court did not make a specific ruling on, much less adopt in a written statement of reasons, Kostakis's other motions for departure at his initial sentencing. This was because the court found that, following the adoption of the six-level departure, Kostakis's sentencing range was already set at 0–6 months, and then sentenced Kostakis to time served. Kostakis, however, had raised other grounds for departures, including (1) departure based on his nine-day pretrial detention; (2) his prolonged separation from his family in Greece; and (3) a combination of circumstances. A strict application of the PROTECT Act would preclude the sentencing court from considering these alternative grounds for departure on remand because they were never "specifically and affirma-tively included in the written statement of reasons." Plainly, this omission occurred because such statutory limitations did not exist at the time of Kostakis's initial sentencing and therefore neither Kostakis nor the sentencing court were aware that these grounds could be precluded on remand. Accordingly, in light of the particular procedural posture of this case, we find that the sentencing court on remand may consider these alternative grounds for departure, which were initially raised by Kostakis below. *Cf. United States v. Lauersen,* 348 F.3d 329, 344 n. 16 (2d Cir.2003) (holding that defendant may raise an alternative ground for an departure because we reversed district court's failure to apply an enhancement at the offense level, this enhancement, once applied, would create a ground for departure that did not exist at the original sentencing, and thus, the limitation "cannot logically apply"). This ruling is in concert with the purpose of the PROTECT Act's limitation of remand authority, which is primarily to "prevent[ ] sentencing courts, upon remand, from imposing the *same* illegal departure on a different theory." *United States v. Jackson,* 346 F.3d 22, 26–27 n. 4 (2d Cir.2003) (emphasis added) (quoting H.R. Conf. Rep. 108–66, at 59 (2003), *reprinted in* 2003 U.S.C.C.A.N. 683, 694); *see also Lauersen,* 348 F.3d at 344 n. 16.

### CONCLUSION

For the reasons stated above, we hereby VACATE Kostakis's sentence and REMAND to the district court so that it may conduct a sentencing hearing and make findings in accordance with the dictates of this decision.